# Richmond

## G. Elliott Wilkinson v. Rice M. Youell, Superintendent of the Virginia State Penitentiary.

December 7, 1942.

Record No. 2630.

Present, All the Justices.

The opinion states the case.

*W. A. Hall, Jr.,* for the petitioner.

*Abram P. Staples, Attorney General, Walter E. Rogers, Assistant Attorney General,* and *Carrington Thompson, Special Assistant,* for the respondent.

HUDGINS, J., delivered the opinion of the court.

In October, 1936, G. Elliott Wilkinson was arrested by a United States marshal in Omaha, Nebraska. Shortly thereafter he was surrendered to the United States marshal for the Eastern District of Virginia, by whom he was placed in the custody of the sheriff of Norfolk county in Norfolk county jail to await trial on a charge pending against him in the Federal court for the Eastern District of Virginia, Norfolk, Virginia.

He was indicted in the Circuit Court of Southampton county at the October term, 1936, for having obtained money under false pretenses and for grand larceny.

The Circuit Court of Southampton county issued a writ of *habeas corpus ad prosequendum,* directing the sheriff of Norfolk county to surrender Wilkinson to the sheriff of Southampton county for the purpose of trial on the indictment pending against him in Southampton county.

Pursuant to this writ, Wilkinson, on January 18, 1937, appeared in person in the Circuit Court of Southampton county and, on his plea of guilty, was sentenced to serve ten years in the State penitentiary. The same order directed the

sheriff of Southampton county to return him to the United States marshal for the Eastern District of Virginia.

On February 1, 1937, on a plea of guilty, the District Court of the United States for the Eastern District of Virginia fined the prisoner $2,000 and sentenced him to seven years' confinement in the United States penitentiary at Atlanta, Georgia.

The execution of the sentence of the Federal court for the Eastern District of Virginia was completed on November 22, 1941, on which date the prisoner was surrendered to the Virginia State authorities and removed to the Virginia State penitentiary for the purpose of serving the sentence pronounced against him by the Circuit Court of Southampton county.

Wilkinson filed an original petition for a writ of *habeas corpus* in this court, alleging the above stated facts and claiming that he is now illegally detained by the superintendent of the Virginia State penitentiary. This contention is based on three grounds: (1) That the State court never acquired legal jurisdiction of his person because his surrender by the Federal authority to the State authority was illegal; (2) that his trial in the Virginia State court was illegal and void because no counsel was appointed to defend him at the time of the trial; and (3) that, even if his trial in the State court was valid, his sentence began to run from the date of the judgment and not from November 22, 1941, the date of his surrender to the Virginia authorities for the purpose of serving the sentence of the State court.

Mr. Chief Justice Taft, in *Ponzi* v. *Fessenden*, 258 U. S. 254, 42 S. Ct. 309, 66 L. Ed. 607, 22 A. L. R. 879, discusses the comity existing between the Federal and State courts. In the opinion this is said: "The people for whose benefit these two systems are maintained are deeply interested that each system shall be effective and unhindered in its vindication of its laws. The situation requires, therefore, not only definite rules fixing the powers of the courts in cases of jurisdiction over the same persons and things in actual

litigation, but also a spirit of reciprocal comity and mutual assistance to promote due and orderly procedure."

The main rule which preserves the two systems of courts from actual conflict of jurisdiction is that the court which first takes the subject matter of litigation under its control, whether this be person or property, must be permitted to exhaust its remedy, to attain which it assumed control, before the other court shall attempt to take it for its purpose. See *Covell* v. *Heyman,* 111 U. S. 176, 4 S. Ct. 355, 28 L. Ed. 390.

"One accused of crime has a right to a full and fair trial according to the law of the government whose sovereignty he is alleged to have offended, *but he has no more than that.* He should not be permitted to use the machinery of one sovereignty to obstruct his trial in the courts of the other, unless the necessary operation of such machinery prevents his having a fair trial. * * * . There is no express authority authorizing the transfer of a Federal prisoner to a state court for such purposes. Yet we have no doubt that it exists and is to be exercised with the consent of the Attorney General. In that officer, the power and discretion to practice the comity in such matters between the Federal and state courts is vested." *Ponzi v. Fessenden, supra.* (Italics supplied.)

It appears from the answer of the superintendent of the Virginia State penitentiary and the affidavits taken in support thereof that, before the writ of *habeas corpus ad prosequendum* was issued, the Commonwealth attorney for the county of Southampton conferred with Mr. Russell T. Bradford, Assistant United States District Attorney for the Eastern District of Virginia, who stated that he, "on behalf of the United States District Attorney for the Eastern District of Virginia, and the Attorney General of the United States consented to allow Wilkinson to be temporarily 'loaned' to the State authorities, and that subsequently the said Wilkinson was taken to Southampton county, tried and returned to the exclusive custody of the United States."

The statements of the Commonwealth's attorney for the county of Southampton and of the Assistant United

States District Attorney clearly prove that the procedure approved by the Supreme Court of the United States was strictly followed by the State authorities in seeking temporary custody of the prisoner for the purpose of trial on the charges pending against him. The original record does not show that the Attorney General or one of his assistants agreed to surrender the custody of the prisoner to the State authorities, but this is not a matter of sufficient importance to invalidate the judgment of the State court.

A prisoner, charged with the violation of the criminal laws of two sovereignties, has no right to complain if one sovereign waives its strict right to exclusive custody of him for vindication of its laws in order that the other may also subject him to conviction of crime against it. "Such a waiver is a matter that addresses itself solely to the discretion of the sovereignty making it, and of its representatives with power to grant it." *Ponzi* v. *Fessenden, supra.*

"One accused of crime, of course, cannot be in two places at the same time. He is entitled to be present at every stage of the trial of himself in each jurisdiction, with full opportunity for defense. * * * . If that is accorded him, he cannot complain. The fact that he may have committed two crimes gives him no immunity from prosecution of either." *Ponzi* v. *Fessenden, supra.* The consent of such prisoner is not material when one sovereign agrees to transfer his custody to another. He is entitled to be present when he is tried by either sovereign and to have full opportunity to make his defense. The record discloses that these rights were accorded the petitioner in this case. *People* v. *Berardi,* 332 Ill. 295, 163 N. E. 668, 62 A. L. R. 274.

It is stated in the petition that, while awaiting trial in the Southampton county jail, the petitioner wrote a letter to the Honorable James L. McLemore, judge of the circuit court, stating that he was totally without funds to engage counsel and requesting the court to designate an attorney to represent him, but that he never received a reply to the letter and no counsel was appointed. On this single allegation, without other proof, petitioner contends that the sentence was void

because such trial, without the aid of an attorney, was a denial of due process within the intendment of the 14th amendment to the Federal Constitution.

The Honorable Allan R. Hanckel, judge of the Circuit Court for the city of Norfolk, was designated to preside at the trial of the petitioner on January 18, 1937, in the State court. The presiding judge, in his affidavit, stated that no counsel was appointed to represent petitioner at the trial because the accused, at the time of the trial, made no request for counsel to be appointed and plead guilty to the indictment. The sheriff of Southampton county and the Commonwealth attorney stated that, prior to the trial, they visited the accused in the Norfolk county jail, at which time the accused told them that he intended to enter a plea of guilty to the indictment pending against him in the State court and to ask for the mercy of the court. He further stated to these officers that he had no intention of engaging the services of counsel.

■■■ Criminal convictions, resulting from trials in which it has been alleged that counsel has not been assigned to indigent prisoners, have been the source of fruitful litigation in *habeas corpus* cases in recent years. Failure to appoint counsel, alone, is not a denial of due process of law within the intendment of the 14th amendment of the Federal Constitution. *Betts* v. *Brady*, 316 U. S. 455, 62 S. Ct. 1252. Waiver of a right to be represented by counsel will ordinarily be implied where the accused appeared without counsel and failed to request that counsel be assigned him. *Buckner* v. *Hudspeth*, 105 F. (2d) 396. "Where an accused personally enters a plea of guilty to a crime whereof he stands charged, and does so understandingly, freely and voluntarily without asking the assistance of counsel, a waiver of the right to be represented by counsel may fairly be inferred. *Logan* v. *Johnston*, D. C., 28 F. Supp. 98; *Erwin* v. *Sanford*, D. C., 27 F. Supp. 892." *Cundiff* v. *Nicholson*, 107 F. (2d) 162.

■■ ■■ The rule in this jurisdiction is that no one accused of crime is compelled to have counsel if he does not so choose. On a writ of error in the *Barnes' Case*, 92 Va. 794,

at 803, it was held that the record must show not only that the accused did not have counsel but that he was denied that right before the judgment would be reversed. Judge Buchanan, speaking for the court in that case, said: "Every person accused of crime has a right to have counsel to aid him in making his defense, but no one is compelled to have counsel. * * * . But we cannot presume that the trial court denied the prisoner her right to have counsel, or failed, if she were unable to employ counsel, to assign some one to aid her in her defense."

In *Watkins* v. *Commonwealth*, 174 Va. 518, 6 S. E. (2d) 670, this court, speaking through Mr. Justice Eggleston, quoted Cooley on Constitutional Limitations (8th ed.), p. 700, as follows: "The right to counsel is permissive and conditional upon the pleasure of the accused. 'Preferring the protection of the court, or choosing to rely upon his own skill and ability, he may not desire the assistance of counsel.'" See *State* v. *Yoes*, 67 W. Va. 546, 68 S. E. 181, 140 Am. St. Rep. 978.

There was no necessity for the trial court to appoint counsel for the petitioner. The proof is that he signified before trial that he did not desire counsel to aid him, and, on his arraignment, plead guilty. The single issue before the trial court was the *quantum* of punishment. The judgment of conviction is not attacked on this ground.

The third and last contention of petitioner is that the provision of the 1919 Code, section 5019, as amended, to the effect that the term of confinement in the penitentiary shall commence from the date of final judgment, is mandatory and admits of no exception.

This contention is unsound. In *Hudson* v. *Youell*, 179 Va. 442, 19 S. E. (2d) 705, this is said: "Code, section 5019 (Michie), stating that confinement shall commence from the date of the final judgment, must be read in conjunction with section 4786, and being general in its terms must give way to section 4786 whenever they conflict, the latter being specific in its terms.

"The intent of the court was, however, unequivocally expressed that the terms should run consecutively. This, even in the absence of a pertinent statutory provision, should have been sufficiently clear and certain for execution."

The opinion then quotes from the case of *Wilborn* v. *Saunders*, 170 Va. 153, 195 S. E. 723, as follows: " 'The law does not contemplate that the court in fixing the punishment shall also fix the beginning and ending of the period during which the imprisonment shall be suffered. The time fixed for executing a sentence, or for the commencement of its execution, is not one of its essential elements, and, strictly speaking, is not a part of the sentence at all. The essential portion of the sentence is the punishment, including the kind of punishment and the amount thereof, without reference to the time when it shall be inflicted. The sentence, with reference to the kind of punishment and the amount thereof, would, as a rule, be strictly executed. But the order of the court with reference to the time when the sentence shall be executed is not so material. Expiration of time without imprisonment is in no sense an execution of the sentence.' *State* v. *Horne*, *supra*."

In the minority opinion in the *Hudson case* this is said: "When the three sections (4786, 4930 and 5019) are construed together and it appears that the court has exercised its power, either at common law or under the statute, the action of the court takes precedence over the directory provisions of the statutes." For further express powers of trial courts over judgments of conviction, see Acts of 1918, ch. 349, carried in Michie's Code as section 1922b and construed in *Richardson* v. *Commonwealth*, 131 Va. 802, 109 S. E. 460.

The judgment of the Circuit Court of Southampton county shows that the court did not intend for the prisoner to begin to serve his sentence immediately. The order entered by the court in the proceedings on the writ of *habeas corpus ad prosequendum*, which brought the petitioner before the court, is in part as follows: "It is further ordered that the said Herbert H. Crangle and G. Elliott Wilkinson are to be returned to the custody of the said sheriff of Norfolk county,

Virginia, so soon as the indictments pending against them in this county shall have been disposed of."

This order is conclusive evidence that the release of the prisoners from Federal custody was for a limited period and for a limited purpose. The trial court recognized the limitation upon its rights and acted in accordance therewith. Further proof of this is found in the final judgment of conviction, wherein it is said: "These men turned over to the sheriff of Norfolk county as per an order entered in the above styled case, on the 23rd day of December, 1936."

It is reasonably clear from the two orders that the trial court did not intend for the sentence imposed by it to begin until the Federal court had exhausted the purpose for which it first obtained control of petitioner. Under these circumstances, the custody of the State court over petitioner was temporary. The State court acted in accordance with established rules of comity. In compliance with those rules, it was compelled to try the petitioner and, as soon as final judgment was entered, to return him to Federal custody. To have committed petitioner to the superintendent of the State penitentiary for service of the sentence on the date of the final judgment would have been a violation of the rules of comity existing between the two sovereigns. See *Lunsford* v. *Hudspeth*, 126 F. (2d) 653; *Miller* v. *Zerbst*, 21 F. Supp. 1015; *People* v. *Berardi, supra.*

For the reasons given above, the prisoner is remanded to the custody of the respondent, the Superintendent of the Virginia State Penitentiary.

*Prisoner remanded.*