# Richmond

C. C. Peyton, Superintendent, Etc. v. Alphonso Russell Williams.

November 29, 1965.

Record No. 6041.

Present, All the Justices.

*Reno S. Harp, III, Assistant Attorney General (Robert Y. Button, Attorney General,* on brief), for the plaintiff in error.

*Hilary H. Jones, Jr.,* for the defendant in error.

Spratley, J., delivered the opinion of the court.

On January 3, 1964, Alphonso Russell Williams, sometimes hereinafter referred to as petitioner, filed a petition for a writ of *habeas*

*corpus* against C. C. Peyton, Superintendent of the Virginia State Penitentiary, hereinafter referred to as respondent, in the Hustings Court of the City of Richmond. The petitioner alleged that he was being unlawfully detained by Peyton by virtue of sentences imposed upon him in the Corporation Court of the City of Norfolk, Part Two, in August, 1956. He attacked each of those sentences as invalid and void on the ground that, as an infant, he had been denied due process of law and the equal protection of the law, in the prior proceedings in the Juvenile and Domestic Relations Court of the City of Norfolk, by its failure to comply with the provisions of §§ 16-172.32 to 16-172.42 of the Code of 1950, as amended. He also alleged lack of effective aid of counsel and other errors in the trials in Corporation Court of the City of Norfolk, Part Two.

The Hustings Court of the City of Richmond issued the writ, returnable to Corporation Court of the City of Norfolk, Part Two. Code 1950, § 8-598. The respondent answered and asserted that petitioner was being presently detained pursuant to a judgment rendered in the Corporation Court of the City of Norfolk, Part Two, on February 15, 1963, whereby he was sentenced to serve 6 years in the penitentiary; that he was not detained pursuant to the 1956 judgments of which he complained; and that since the writ prayed for did not attack the validity of petitioner's present detention, prayed that the writ be denied and the petition be dismissed.

The case came on to be heard on April 22 and 23, 1964, on the pleadings, so much of the records as could be found pertaining to petitioner's trials and hearings in the Juvenile and Domestic Relations Court in 1956, the records of the Corporation Court of the City of Norfolk, Part Two, and of the State Penitentiary, relating to Williams, and the testimony of witnesses.

The evidence showed the following:

Williams, a child under 17 years of age, was arrested on May 30, 1956, and charged with four separate offenses of robbery. He was taken before the Juvenile and Domestic Relations Court of the City of Norfolk on May 31, 1956, for a hearing. On June 21, 1956, the four charges were certified by the above court to "Corporation Court, Part One," for further criminal proceedings. [There is no court of that designation in the City of Norfolk.]

On July 2, 1956, four indictments were returned against Williams by the grand jury of the Corporation Court of the City of Norfolk, Part Two: three for robbery and one for attempted robbery. Coun-

sel was appointed to represent the accused, an indigent. On July 9, 1956, Williams, in his own proper person, pleaded guilty to each of the four indictments, waived a jury, and by agreement was tried on all four indictments at the same time. He was found guilty on each, and imposition of sentence was postponed until a later date.

On August 10, 1956, the Corporation Court of the City of Norfolk, Part Two, imposed the three following sentences on Williams: on one indictment for robbery, 8 years in the penitentiary; on another indictment for robbery, 8 years in the penitentiary; and on a third indictment for attempted robbery, 3 years in the penitentiary. The two latter sentences were ordered to run concurrently with the first 8-year sentence.

On August 14, 1956, the court, on the fourth indictment, sentenced Williams to 8 years in the penitentiary, 4 years of that sentence being suspended.

Williams was committed to, and received in, the State Penitentiary, assigned Prison No. 70042, and his total sentence computed to be 12 years. His term was reduced on January 16, 1959, to 11 years and 10 months, and on February 15, 1960, to 11 years and 8 months.

On July 20, 1960, Williams was paroled from the penitentiary by order of the Virginia State Parole Board. Virginia Code, 1950, § 53-238.

On February 15, 1963, Williams, while on parole, was convicted of a separate and unrelated crime of robbery, and sentenced to a term of 6 years in the penitentiary. He was received in the penitentiary on March 8, 1963, and given Prison No. 82939. That sentence would have normally expired on August 6, 1966, had he not escaped from the penitentiary, and also received a sentence as a second offender.

On March 21, 1963, 13 days after he had been received in the penitentiary for the sentence imposed on him on February 15, 1963, Williams' parole from the sentences imposed on him in 1956 was revoked by the Parole Board. At that time, he had 5 years, 6 months and 13 days of his 1956 sentences left to serve.

On April 23, 1963, Williams was sentenced, as a second offender, to serve 1 year in the penitentiary, 6 months being suspended. On December 18, 1963, he was sentenced to a term of 1 year for escape. He thereby lost 3 months and 5 days of good time he had formerly earned. As the result, according to the computation of respondent, his confinement in the penitentiary will not expire until January 25, 1972.

Petitioner and several witnesses testified that at the hearing before the Juvenile and Domestic Relations Court in 1956, he did not have counsel; that his parents were not summoned to appear, and were not present; and that no guardian *ad litem* was appointed for him.

In a written opinion, the trial judge found that petitioner was then presently detained pursuant to the sentences imposed on him in 1956; that the judgments imposing said sentences in 1956 were "illegal and void" due to the failure of the Juvenile and Domestic Relations Court to comply with the provisions of § 16-172.32, now § 16.1-166; § 16-172.33, now § 16.1-167; § 16-172.35, now § 16.1-169; § 16-172.39, now § 16.1-173; § 16-172.42, now § 16.1-176 of the Code of Virginia, 1950, as amended, citing *Tilton* v. *Commonwealth*, 196 Va. 774, 85 S. E. 2d 368. (Cf. *Lowe* v. *Grasty*, 203 Va. 168, 122 S. E. 2d 867); that consequently, the Juvenile and Domestic Relations Court and the Corporation Court of the City of Norfolk, Part Two, were without jurisdiction to try or sentence the petitioner on the 1956 charges. On June 5, 1964, judgment was entered ordering that respondent "do forthwith release petitioner from the aforesaid confinement, unless he has other valid sentences to serve and remand him to the custody of the Juvenile and Domestic Relations Court of the City of Norfolk."

Respondent duly objected to the finding of the court that petitioner was detained pursuant to invalid sentences imposed in 1956; in allowing the procedures of the Juvenile and Domestic Relations Court to be attacked; and in overruling his motion to deny the writ.

Petitioner has, at no time, attacked the validity of the judgment of conviction rendered on February 15, 1963, or the sentence of 6 years thereby imposed upon him. He has confined himself solely to the attack upon the 1956 judgments and sentences. It will be observed that the judgment in this proceeding does not authorize the immediate discharge of petitioner from custody.

S. J. Melton, Director of the Bureau of Records, Virginia State Penitentiary, testified that his duties, in part, were to receive all court orders and commitments of prisoners to the penitentiary; to supervise computation of the time of their sentences; and to maintain complete prison records of their confinement until released. He said he prepared the prison record of Williams, No. 82939, in accordance with standard administrative practice and interpretation of the laws relating to the time of service of prisoners. He explained that petitioner was received in the penitentiary on March 8, 1963, as a

new prisoner, on a new sentence, pursuant to his conviction on February 15, 1963; that Williams was then given a new number, "because he committed a new felony and received a new sentence." He had no notice or knowledge prior to March 21, 1963, that the Parole Board had revoked the parole granted Williams in 1960. Further, he said that, "As far as we were concerned at the penitentiary, since he (Williams) had been previously paroled, he did not have this sentence [1956 sentences] to serve until the Board acted to revoke his parole. Our procedure is that a man cannot serve a sentence left from parole until the Board actually revokes it, because, actually, he doesn't have it when it is revoked."

Williams was, and had been for 13 days, in the custody of respondent at the time his parole was revoked. On March 21, 1963, under the standard administrative procedure of the penitentiary, he was being detained pursuant to his February 15, 1963, sentence. Upon the completion of that sentence, Melton said, "he will then pick up" the unserved portion of his 1956 sentence.

The Virginia Parole Board is authorized by § 53-238, Code of 1950, (1) to adopt rules governing the granting of parole and the investigation, conduct and supervision of persons placed upon parole; (2) to release on parole, subject to its rules, for such time and upon such terms and conditions as the Parole Board shall prescribe, persons convicted of felonies in any penal institution in the Commonwealth; (3) to revoke same and order the reincarceration of any person on parole; and (4) to issue final discharges to persons on parole.

Section 53-256 provides that: "The time during which a parolee is at large on parole shall not be counted as service of any part of the term of imprisonment for which he was sentenced upon his conviction."

Section 53-258 provides that the Board may issue, or cause to be issued, a warrant for the arrest and return of a parolee to the institution from which he was paroled, or to any other penal institution which may be designated by the Board, for a violation of the terms of his parole.

Under § 53-262, it is within the discretion of the Parole Board whether to revoke a violator's parole completely and send him back to the penitentiary from which he was paroled, or to any other penal institution in the State, or modify the terms of the parole, leaving him out on parole, or take no action whatever.

Section 53-207 reads as follows:

"The term of confinement in jail or in the penitentiary for the commission of a crime shall commence and be computed from the date of the final judgment, which, in case of an appeal, shall be that of the refusal of a writ of error or the affirmance of the judgment. (Code 1919, § 5019; 1920, p. 395; 1924, p. 312; 1928, p. 187; R. P. 1948, § 53-207.)"

In *Wilkinson* v. *Youell*, 180 Va. 321, 329, 23 S. E. 2d 356, we held that § 53-207 is not mandatory. Moreover, it contains no specific requirement for the sequence of sentences to be served.

The dentention of Williams by the respondent came to an end when the parole was granted. During the time that Williams was on parole, he was in the custody of the Virginia Parole Board and not that of the respondent. *Jones* v. *Cunningham*, 371 U. S. 236, 9 L. ed. 2d 285, 290, 83 S. Ct. 373, 92 A. L. R. 2d 675. The respondent did not regain custody of petitioner for the service of his 1956 sentences until March 21, 1963, the date of the revocation of his parole. At the time of the revocation, petitioner was, and had been since March 8, 1963, in the custody of respondent, pursuant to petitioner's conviction of February 15, 1963.

The treatment of petitioner on March 8, 1963, as a new inmate of the penitentiary arose from the fact that his parole from the 1956 sentences had not been revoked at that time. Williams, out on parole, would not have been returned to the custody of respondent, had he not violated his parole or been committed for some other offense. Having begun to serve the 1963 sentence, there is no good reason shown why service of that sentence should be stayed, or interrupted.

Code, § 53-207 merely provides that the term of confinement in jail, or in the penitentiary, shall be computed from the date of the final judgment. It contains no provision or requirement for computing a term of confinement contrary to the method pursued by respondent. The computation of respondent was reasonable and not in conflict with the statute.

The elementary rule of statutory interpretation is that the construction accorded a statute by public officials charged with its administration and enforcement is entitled to be given weight by the court. The legislature is presumed to be cognizant of such construction. When it has long continued without change the legislature will be presumed to have acquiesed therein. *Smith* v. *Bryan*, 100 Va. 199, 204, 40 S. E. 652. See also *Commonwealth* v. *Appalach. El.*

*Power Co.,* 193 Va. 37, 45, 68 S. E. 2d 122; *Commonwealth* v. *Radiator Corporation,* 202 Va. 13, 19, 116 S. E. 2d 44; *Miller* v. *Commonwealth,* 180 Va. 36, 42, 21 S. E. 2d 721; 82 C. J. S., Statutes, § 359 (a) and (c), pp. 761-781; 50 Am. Jur., Statutes, § 319, pp. 309-311; 2 Sutherland on Statutory Construction, 3rd Ed., §§ 5103-5105, pp. 512-517.

In *McDorman* v. *Smyth,* 187 Va. 522, 525, 47 S. E. 2d 441, we said:

"*Habeas corpus* is a writ of inquiry granted to determine whether a person 'is detained without lawful authority.' Virginia Code, 1942 (Michie), section 5848. It is available only where the release of the prisoner from his immediate detention will follow as a result of an order in his favor. It is not available to secure a judicial determination of any question which, even if determined in the prisoner's favor, could not affect the lawfulness of his immediate custody and detention. It cannot be used to modify or revise a judgment of conviction." *Smyth* v. *Holland,* 199 Va. 92, 96, 97 S. E. 2d 745; *Smyth* v. *Midgett,* 199 Va. 727, 730, 101 S. E. 2d 575.

In *McNally* v. *Hill,* 293 U. S. 131, 55 S. Ct. 24, 79 L. ed. 238, Mr. Justice Stone said:

"There is no warrant in either the statute or the writ for its use to invoke judicial determination of questions which could not affect the lawfulness of the custody and detention, * * *."

We are aware that the concept of the scope of the writ of *habeas corpus* has been expanded in recent years by statutes and court decisions in some of the States, and by the Federal courts with regard to what constitutes "detention" or "custody." *Jones* v. *Cunningham, supra,* 371 U. S. 236, and *James Edward Martin* v. *C. C. Peyton, Superintendent, etc.,* 349 F. 2d 781, 4 C. C. A. No. 9613, decided August 5, 1965. However, we think that *habeas corpus* is not applicable to the peculiar facts and circumstances of this case under our statutes and decisions.

We are of opinion that petitioner is presently detained by respondent by virtue of the sentence imposed on him on February 15, 1963. The trial court should have sustained the motion to deny and dismiss the petition for the writ. It is, therefore, unnecessary to discuss the remaining assignments of error. We express no view as to the validity of the 1956 judgments. Accordingly, the judgment complained of is reversed; the prayer for the writ denied; and the petition dismissed.

*Reversed and dismissed.*