David Lawrence **PERKINS**, Appellant,

v.

**C. C. PEYTON**, Superintendent of the Virginia State Penitentiary, Appellee.

No. 10504.

United States Court of Appeals
Fourth Circuit.

Argued Oct. 7, 1966.

Decided Nov. 21, 1966.

George C. Cochran, Dallas, Tex. (Court-assigned counsel), for appellant.

Reno S. Harp, III, Asst. Atty. Gen., of Virginia (Robert Y. Button, Atty. Gen., of Virginia, on brief), for appellee.

Before HAYNSWORTH, Chief Judge, and SOBELOFF and BRYAN, Circuit Judges.

HAYNSWORTH, Chief Judge:

Perkins attacks his sentence—service computation under multiple convictions on "bad-check" charges in Virginia. His habeas corpus petition was denied on the ground that interpretation of the judgment orders was a question of state law, involving no federal question. Under the extraordinary circumstances of this case, we think there is a federal question which calls for affirmative relief.

Before 1962, Perkins had no confirmed history of criminality. Late in that year, however, he launched upon a spree, negotiating fraudulent checks, which led to charges in three of Virginia's trial courts.

On April 16, 1963, Perkins was convicted of uttering a bad check in the Circuit

Court of the County of York. A two year prison sentence was imposed, but service of the second year was suspended.

Two days later, he was convicted in the Hustings Court of the City of Newport News on pleas of guilty to five indictments charging similar offenses. Each indictment charged him in two separate counts with forgery and with uttering falsely made securities. In each indictment, a sentence of two years was imposed on each count, with the provision that two years of each sentence was to be served and the other two years suspended. It was further expressly provided that each of the five sentences was to run concurrently with the York County sentence.

The next day, he was convicted in the Circuit Court of the City of Hampton, on guilty pleas, on six indictments charging forgery. On each indictment, a two year sentence was imposed with an explicit provision that each of the six sentences should run concurrently with each other, but consecutively with all prior sentences.

After Perkins was received in the penitentiary, his obligation of sentence service was determined by the administrators to be four years less mandatory "good time" credits. This was obviously a construction of the five Newport News sentences of two active years, each of which was to run concurrently with the York County sentence, as imposing an obligation of two years of active service to which the concurrent Hampton sentences of two years active service, clearly consecutive to the York and Newport News sentences, were added to make a total of four years of active service obligation.

A few weeks later, however, his prison service obligation was recomputed. It was then determined that he must serve, not four, but twelve years, again, of course, less "good time" credits. This was obviously on the theory that only one

of the Newport News sentences ran concurrently with the York County sentences, though each contained the identical provision that it be concurrent with the York sentence, so that the Newport News sentences, made consecutive to each other, imposed a service obligation of ten years.[1]

Still later, his service obligation was again recomputed. This time the administrative determination was eight years.[2] This figure was arrived at by treating the five Newport News sentences as running concurrently with the York sentence for one year and thereafter as consecutive to each other. Though he entered immediately upon service of all five of the Newport News sentences and, after one year, was entitled to one year's credit on each of them, this recomputation credited each subsequent year's service to only one of them so as to require a total of six years service on the Newport News sentences.

Perkins sought habeas corpus in the Hustings Court of the City of Newport News. It was denied in a formal order after the Director of the Bureau of Records of the Virginia Penitentiary testified to his inability to see how a two year sentence could run concurrently with a one year sentence, though admitting that if one year of the two year York sentence had not been suspended, all of the Newport News sentences would have run concurrently and would have required only two years, not six years, service. The Virginia Supreme Court of Appeals denied a petition for certiorari, again, in a formal order, so that we do not have the benefit of the reasoning of either court in rejecting the prisoner's attack on the administrative computation.

The District Court denied relief when Perkins turned to it. It was of the opinion that interpretation of state sentences is a question of state law, as, indeed, it

1. The Hampton sentences, clearly consecutive to the Newport News sentences, provided the additional two years to make the twelve year obligation.

2. Actually the determination was of eight years and four months, but the four months was the derivative of a subsequent sentence for escape. Eight years was attributable to the sentences with which we are concerned.

is, but, under the extraordinary circumstances present here, we think judicial acceptance of strained and unreasonable administrative determinations involves federal as well as state questions.

■ Reasonable resolution by a state court of an ambiguity in one of its criminal judgments is uncomplicated by any federal limitation, and resort may certainly be had to established administrative practices, known to trial judges of the state, in an interpretation of the sentence. Even if the judge acts under a mistaken view of state law, no federal question would ordinarily arise.[3] On the other hand, a state prisoner clearly has a Fourteenth Amendment right to be released from service of a sentence upon expiration of its unequivocal term. He has a similar right not to be detained under a judgment which is so vague and uncertain as to be invalid under the familiar principles of due process.

Without the benefit of any state court's explication of these sentences we must begin with our own appraisal of them.

Every school child learns soon after his introduction to algebra, if not before, of the transitive property of equality expressed in the axiom, "Things that are equal to the same thing are equal to each other." It is equally axiomatic that things that run concurrently with the same thing run concurrently with each other.

That inescapable mathematical fact apparently was fully recognized in the initial administrative computation. Because each of the Newport News sentences contained a provision that it was to run concurrently with the York sentence, they were treated as concurrent among themselves, imposing, collectively, an active sentence of two years. It was totally disregarded in the second computation in which the Newport News sentences were treated as consecutive to each other, and, in disregard of the explicit direction of the court, four of the five were treated as not concurrent with the York sentence.

In the third computation, there was a grudging deference to the principle and to the unequivocal requirement of the court that each sentence run concurrently with the York sentence. Each was counted as running concurrently with the York sentence and concurrently with each other until the unsuspended portion of the York sentence expired, but, afterwards, the unexpired portions of each of the Newport News sentences were counted consecutively.

■ This may have been a literal compliance with the Newport News judgments, since they were treated as concurrent with the York sentence during its active service requirement. It is a distortion of them, however, and this computation is a flagrant violation of the principle that once service of a sentence has commenced, it is not subject to interruption as long as the prisoner is in physical custody. In the eight-year computation, the Warden concedes that Perkins began the service of all five of the Newport News sentences at the same time. He credited each sentence with one year at the end of one year in prison, but administratively decreed an interruption of sentence service of four of the five sentences after one year's service of each.

Such splitting of a single active service sentence might be permissible if required in the sentencing order explicitly or implicitly in the light of well-established administrative practice. Here there was neither. The judgments spell out no such direction, and the record contains no suggestion of an established administrative practice of treating sentences as concurrent for a portion of their terms and as consecutive thereafter. That it took the Warden three tries to come up with the theory belies the existence of any established administrative practice to support it.

We can find nothing in Virginia's statutes or decisions to assist the Warden's third computation. The indication is that the Virginia Supreme Court of

---

3. Gryger v. Burke, 334 U.S. 728, 68 S.Ct. 1256, 93 L.Ed. 1683.

Appeals applies the principle that once service of a sentence is commenced it cannot be interrupted, in the absence of compelling reason, as long as the prisoner remains in physical custody.[4]

In this Court, the Warden seeks support only in § 19.1–294 of the Code of Virginia (1950). That Section provides that multiple sentences on convictions for multiple offenses "shall not run concurrently, unless expressly ordered by the court." No precise form of words is prescribed, however, to make the order an effective open sesame. Concurrent service is "expressly ordered," within the meaning of the statute, whenever the order contains a direction compliance with which will produce that result. The requirement in each of the Newport News sentences of concurrent running with the York sentence is such a direction.

Whatever doubt we might have had about this case is dispelled by the very recent decision of Virginia's Supreme Court of Appeals in Conner v. Commonwealth of Virginia, 207 Va. 455, 150 S.E.2d 478. Conner received a sentence of two years on each of four, separate indictments. The judgment orders did not contain the magical formula that each sentence should run concurrently with each of the others in those approximate words, but each order did direct that the two-year period should be computed from that date. Execution of the sentences was suspended, however, upon four months imprisonment, restoration of the fruits of his crimes and good behavior on probation for two years. Later Conner violated the terms of his probation, and the trial court ordered consecutive service of two of the original sentences. On the defendant's appeal, the direction of successive service was reversed. The provision in the original orders that the term of each should be computed from the date of the judgment "was unmistakably a re-

quirement that the four sentences were to run concurrently," notwithstanding the parallel between the language of the orders and the provisions of § 53–207 of the Code, which, it had been held,[5] must be read with § 19.1–294 and does not control the sequence of sentence service. Since the original sentences expressly ordered concurrent service within the meaning of § 19.1–294, it was held beyond the power of the trial judge later to make them consecutive.

As in *Conner,* the orders here unmistakably require that each of the Newport News sentences commence in service on the same day. They go further and unmistakably require that they run concurrently, at least to the halfway station. The magic word is employed and the intention of the sentencing court of complete concurrency far plainer than in *Conner.* It follows that, as held in *Conner,* it was beyond the power of the sentencing court later to enlarge the sentences by making them partially consecutive. It certainly was beyond the Warden's power.

We conclude that the Newport News sentences, viewed in the light of Virginia's statutes and the decisions of her Supreme Court of Appeals, so clearly imposed an effective term of two years only that they were not subject to later enlargement by purported construction. The support they lend to the Warden's third interpretation is too attenuated to meet constitutional standards. Due process forbids holding Perkins under them for longer than two years less statutory or administrative credits to which he may be entitled.

While it is appropriate to order his release from service of the Newport News judgments, we are not certain that the two subsequent, consecutive sentences have now been fully served. The case will be remanded to the District Court with instructions to frame an appropriate order, in light of this opinion, after re-

---

4. See Peyton v. Williams, 206 Va. 595, 145 S.E.2d 147, 151.

5. Peyton v. Williams, 206 Va. 595, 145 S.E. 2d 147, 150; Wilkinson v. Youell, 180 Va.

321, 329, 23 S.E.2d 356, both discussed in *Conner.*

computation of his sentence service with appropriate credits.

Reversed and remanded.

ALBERT V. BRYAN, Circuit Judge (dissenting):

I would affirm Judge Butzner's refusal to interfere with the State courts' computation of this State convict's term of imprisonment when it was not shown to be discriminatory, unfair, or excessive punishment.

It was computed, after several reviews, by the Virginia penitentiary administration at 8 years. This, too, is the computation of the judge who passed the sentences, in the Hustings Court of the City of Newport News. Thereafter the Supreme Court of Appeals of Virginia refused to disturb the 8-year determination.

Thus, the meaning of the *State* sentences has been established by the *State* courts. Uniformly and rightly Federal courts are required to accept the State courts' interpretations of State laws and proceedings. Yet now this court holds that the State courts do not know what their own sentences mean, even Statewise.

Again, it is not what we think that controls. We may disapprove the splitting or arrangement of the sentences; we may deem the meaning given them by the State courts to be wrong; but all this is of no consequence. So long as the imposition and effect of the sentences do not offend Constitutional guarantees of due process or equality of treatment—and none is intimated here—there is no justification for Federal intervention.

However, if we are to undertake to ascertain the incarceration required by the sentences, I concur with the District Court's agreement with the State's application of them. The prisoner was committed to serve 1 year by the Circuit Court of York County. Thereafter, in the Newport News Hustings Court he was ordered confined for 2 years on each of 5 indictments, but each of these 2-year terms was made to run concurrently with the 1-year York sentence. The Hustings Court sentences are not ordered to run concurrently with each other, and in the absence of such a direction the statute requires they be served consecutively. Va.Code, 1950, sec. 19.1–294. This meant that each of the 2-year terms would be credited with the 1 year as served under the York sentence. Hence, the prisoner had 1 year left to be served on each of the Hustings Court's 5 sentences, or a net of 5 years.

The York sentence of 1 year plus the Hustings Court's 5 years, gives a total of 6 years. Another 2 years, concededly, is added on account of a sentence of that length in the Circuit Court of the City of Hampton, Virginia. Thus the sentences directed an aggregate detention of 8 years.

With the District Court and the State, I cannot see how a 2-year term can run *completely* concurrently with a 1-year term. They can be coextensive for 1 year only. To repeat, the Virginia statute declares that the Hustings sentences shall not run simultaneously when, as here, they do not carry a provision for coincidence. But by resort to algebra the majority telescopes time and transcends the statutory bar per saltum. Nothing in the cited case of Conner v. Commonwealth of Virginia, 207 Va., 455, 150 S.E. 2d 478 (decided October 10, 1966) or other Virginia decisions do I see sustaining the decision of the court.

The Virginia courts are more expert in reading Virginia judgments than are we. For this reason, and because I am deeply concerned about the continual and ready conversion of State questions into Federal issues, I would affirm.