COURT OF APPEALS OF VIRGINIA


Present:   Judges Frank, McClanahan and Petty
Argued via teleconference


COMMONWEALTH OF VIRGINIA

                                                    MEMORANDUM OPINION[*] BY
v.        Record No. 1179-09-3                      JUDGE WILLIAM G. PETTY
                                                    OCTOBER 20, 2009

JOHNNY LAMONT VENABLE, III


FROM THE CIRCUIT COURT OF THE CITY OF MARTINSVILLE
G. Carter Greer, Judge

Joshua M. Didlake, Assistant Attorney General (William C. Mims,
Attorney General, on brief), for appellant.

Joseph A. Sadighian, Senior Assistant Appellate Defender (Office of
the Appellate Defender, on brief), for appellee.


The Commonwealth appeals the trial court's order dismissing indictments against Johnny

Lamont Venable, III because of a violation of his Sixth Amendment right to a speedy trial.[1]  The

Commonwealth argues that there was no speedy trial violation because the reason for the delay

was inadvertent negligence and Venable suffered no prejudice as a result of that delay.  Venable,

however, responds by arguing that he was prejudiced by the delay because his intervening

federal convictions would increase his sentence under the Commonwealth's sentencing

guidelines.  For the following reasons, we conclude that the trial court erred, as a matter of law,

by holding that Venable's Sixth Amendment right to a speedy trial had been violated.

Accordingly, we reverse the judgment of the trial court and remand for trial on the indictments.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] Venable did not claim that his right to a speedy trial under Article 1, Section 8 of the
Constitution of Virginia or Code § 19.2-243 had been violated.  Rather, his only argument was
that his Sixth Amendment right to a speedy trial had been violated.

Because the parties are fully conversant with the record in this case and this memorandum opinion carries no precedential value, we recite only those facts and incidents of the proceedings as are necessary to the parties' understanding of the disposition of this appeal. We view those facts and incidents in the "light most favorable" to Venable, as the prevailing party below, Finney v. Commonwealth, 277 Va. 83, 87, 671 S.E.2d 169, 172 (2009), and we grant to him all fair inferences flowing therefrom, Huffman v. Commonwealth, 51 Va. App. 469, 470, 658 S.E.2d 713, 713 (2008).

## I. ANALYSIS

The Commonwealth contends that the trial court erred in dismissing Venable's indictments because Venable was not denied his constitutionally guaranteed right to speedy trial. In support of its position on appeal, the Commonwealth argues that the reason for its delay was inadvertent negligence and Venable suffered no prejudice as a result of that delay. Venable responds by arguing that the Commonwealth's negligence that resulted in a three-year and seven-month delay does not justify the prejudice he incurred as a result of that delay.

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial . . . ." U.S. Const. amend VI. The Supreme Court of the United States has propounded a four-part balancing test which requires an inquiring court to weigh the "[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." Barker v. Wingo, 407 U.S. 514, 530 (1972). We cannot regard any of "'the four factors . . . as either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial. Rather, they are related factors and must be considered together with such other circumstances as may be relevant.'" Fowlkes v. Commonwealth, 218 Va. 763, 770, 240 S.E.2d 662, 667 (1978) (quoting Barker, 407 U.S. at 533).

"We review *de novo* a properly preserved constitutional claim," United States v. Hall, 551 F.3d 257, 266 (4th Cir. 2009); however, we review the underlying findings of fact under the plainly wrong standard, Code § 8.01-680.

## A.  Length of Delay

Before an accused can trigger a speedy trial analysis, he must establish that there is some delay that is "presumptively prejudicial." Barker, 407 U.S. at 530.  Unless that presumptively prejudicial delay occurs, there is no need to inquire into the other factors required by the Barker balancing test. Id.  Whether the delay is presumptively prejudicial depends on "the peculiar circumstances of the case." Id.

The United States Supreme Court has clearly articulated that "the Sixth Amendment speedy trial provision has no application until the putative defendant in some way becomes an 'accused' . . . ." United States v. Marion, 404 U.S. 307, 313 (1971).  In this case, Venable was indicted on October 18, 2005.  Therefore, he became an accused for the purposes of the Sixth Amendment on October 18, 2005 and the calculation of the delay in disposing of his indictments begins on that date.  Venable was not arrested on those indictments until February 19, 2009, which was three years and four months after he was indicted.  One month later, on March 17, 2009, he was arraigned and his trial date was set for April 27, 2009.  On May 5, 2009, Venable filed a motion to dismiss his indictments on the grounds that his right to speedy trial had been violated.  On May 15, 2009, the trial court heard evidence and dismissed Venable's indictments on speedy trial grounds.  Thus, the total length of post-indictment delay, at the time of the trial court's ruling, was three years and seven months.  That delay is "sufficient to merit further review." Miller v. Commonwealth, 29 Va. App. 625, 633, 513 S.E.2d 896, 900 (1999) (a delay of thirteen months was "sufficient to merit further review"); see also Holliday v. Commonwealth, 3 Va. App. 612, 617, 352 S.E.2d 362, 365 (1987) (a delay of ten months was presumptively prejudicial and required a further inquiry).

B.  Reason for Delay

The length of delay, however, is only the starting point for a speedy trial analysis.  Beachem v. Commonwealth, 10 Va. App. 124, 131, 390 S.E.2d 517, 520 (1990).  Accordingly, we must consider the second factor in the balancing test, which is "the reason the [Commonwealth] assigns to justify the delay."  Barker, 407 U.S. at 531.  Those reasons typically range from legitimate governmental concerns over justice and protecting society from criminals by securing a conviction to simple negligence or "deliberate attempt[s] to delay . . . in order to hamper the defense."  Id.

Logically, if the government's reason for delay is legitimate, this factor weighs in favor of the government and tends to support the conclusion that the delay was not a violation of the accused's Sixth Amendment speedy trial right.  Id.  On the other end of that sliding scale, however, is delay for an illegitimate reason such as when the Commonwealth intentionally delays a trial in order to diminish the possibility of an acquittal.  Id.  In that instance, this factor weighs in favor of the accused and tends to support the conclusion that the delay was a violation of his speedy trial right.  Id.  Somewhere in between those two extremes lies a more benign explanation, such as the Commonwealth's mere negligence in bringing the accused to trial on his charges.  Beachem, 10 Va. App. at 132, 390 S.E.2d at 520-21.  When the only reason for a delay is the negligence of the Commonwealth, this factor weighs in favor of the accused.  Id. at 132, 390 S.E.2d at 521.  However, "it does not, standing alone, justify the dismissal of criminal charges."  Id.

On appeal, the Commonwealth contends that the reason for the delay was inadvertent negligence.  It argues that because Venable was indicted as Johnny Lamont Venable, as opposed to Johnny Lamont Venable, III, the Commonwealth and the court were both confused regarding Venable's identity, which was evidenced by the fact that the court "informed Venable that he had no pending charges."  However, once the error was detected, it was "quickly fixed."  Venable disagrees with the Commonwealth's characterization of the reason for the delay and argues that the

Commonwealth did not argue that this confusion caused the delay at the trial court. He contends that the Commonwealth knew his identity based on his identifying information listed on the capias, which was issued simultaneously with his indictments, and the subsequent detainers lodged against him in both West Virginia and Michigan. Venable argues that the Commonwealth relied on the fact that Venable was "in other locations, in jail or in Federal custody . . ." as its reason for the delay. Thus, he contends, because the Commonwealth's argument on appeal was not made to the trial court, we cannot consider it here. Rule 5A:18; Commonwealth v. AMEC Civil, LLC, 54 Va. App. 240, 272, 677 S.E.2d 633, 649 (2009) ("Rule 5A:18 precludes appellants from raising for the first time on appeal grounds asserted as a basis for reversal of the trial court's judgment." (quotation marks omitted)). We agree with Venable, and we will not consider this argument on appeal.

We do, however, consider the Commonwealth's argument made at trial—that the federal government had custody of Venable from his initial incarceration in the Roanoke City jail to his post-conviction incarceration in a federal correctional institution in West Virginia and later in Michigan. When two autonomous sovereigns want custody of the same individual, "[t]he main rule . . . is that the court which first takes the subject matter of litigation under its control, whether this be person or property, must be permitted to exhaust its remedy, to attain which it assumed control, before the other court shall attempt to take it for its purpose." Wilkinson v. Youell, 180 Va. 321, 326, 23 S.E.2d 356, 358 (1942). After the first sovereign "exhaust[s] its remedy," the Attorney General has the "power and discretion" to "transfer . . . a federal prisoner to a state court for" trial by the second sovereign. Id.

Clearly, these principles are given due effect in the Interstate Agreement on Detainers[2] (the "Agreement") by permitting transfers only after the first state has obtained a conviction. Carchman v. Nash, 473 U.S. 716, 731 n.9 (1985) (stating that "[a]lthough a probation-violation detainer initially might be based on an arrest, the probationer cannot invoke Art[icle] III until he 'has entered upon a term of imprisonment in a penal or correctional institution of a party State'—that is, until he has been convicted of the offense in the sending State and commenced to serve his sentence there"). "'A detainer is a notification filed with the institution in which a prisoner is serving a sentence, advising that he is wanted to face pending *criminal charges* in another jurisdiction.'"[3] Id. at 729 (emphasis in original) (quoting H. R. Rep. No. 91-1018, p. 2 (1970); S. Rep. No. 91-1356, p. 2 (1970)). Either the accused, or the proper authority in the receiving state can request a transfer. Code § 53.1-210, Article III (a) & Article IV (a). But in both cases, the request cannot be made under the Agreement until the accused has been convicted in the sending state. See Carchman, 473 U.S. at 731 n.9.

While at the time of his indictment Venable was physically incarcerated in the Roanoke City jail, he was legally in federal custody awaiting trial on multiple federal drug charges. During the period Venable was in federal custody awaiting trial, the Commonwealth could not arrest him and bring him to trial on his state indictments. During that time, "Virginia had no right to his custody." Williamson v. Commonwealth, 13 Va. App. 655, 660, 414 S.E.2d 609, 611 (1992); cf. Jiron-Garcia v. Commonwealth, 48 Va. App. 638, 633 S.E.2d 744 (2006) (The sending state retains custody

---

[2] Both Virginia and the United States of America are parties to the Interstate Agreement on detainers, which provides the authority for two autonomous sovereigns to cooperate within their respective criminal justice systems by "sharing" prisoners among the party states. Code § 53.1-210; 18 U.S.C. App. § 2; accord New York v. Hill, 528 U.S. 110, 111 (2000).

[3] "A detainer is an administrative device, serving only to advise a sister state that the inmate is wanted to face criminal charges. A detainer does nothing to commence prosecution, nor does it bring the inmate into the 'custody' of the requesting jurisdiction." Ford v. Commonwealth, 33 Va. App. 682, 691-92, 536 S.E.2d 467, 471-72 (2000) (citations omitted).

when the receiving state obtains a writ of *habeas corpus ad prosecuendum* because that writ is of limited duration and the accused is "merely on loan to that jurisdiction's authorities."). Thus, from the date of the indictment, October 15, 2005, until Venable entered his guilty plea in federal court in December 2006, the Commonwealth had no ability to bring Venable to trial on his indictments. Williamson, 13 Va. App. at 660, 414 S.E.2d at 611.

The United States Court of Appeals for the Fourth Circuit has recognized this reason as a legitimate excuse for the portion of the delay attributable to it. United States v. Thomas, 55 F.3d 144, 150-51 (4th Cir. 1995). Namely, "the need to allow [the accused] to be prosecuted by the" federal government "without interference by the" Commonwealth. Id. at 150. "To do otherwise would be to mire the state and federal systems in innumerable opposing writs, to increase inmate transportation back and forth between the state and federal systems with consequent additional safety risks and administrative costs, and generally to throw parallel federal and state prosecutions into confusion and disarray." Id. at 150-51. Accordingly, we believe that this is a legitimate reason that accounts for one year and three months of the delay discussed above.

After Venable's federal convictions, he was transferred to a federal correctional institution in West Virginia and the Commonwealth lodged a detainer against him. Pursuant to the Agreement, the official having custody over Venable was required to "promptly inform him of the source and contents of [the] detainer" and "his right to make a request for final disposition of the indictment . . . on which the detainer [was] based." Code § 53.1-210 art. III (c). Venable never requested a final disposition of the indictments. Subsequently, Venable was transferred to a federal correctional institution in Michigan where the Commonwealth, again, lodged a detainer against him. Again, Venable never requested a final disposition of the indictments.

The trial court found that, after Venable had been convicted and transferred to a federal correctional institution outside of the geographical boundaries of Virginia, the Commonwealth had

a legitimate reason for not bringing him to trial on his indictments—that is, Venable was "essentially beyond the subpoena power of the Court." Once Venable was convicted of his federal charges, he had "entered upon [or was serving] a term of imprisonment" as described by Article III and IV of the Agreement. Code § 53.1-210 art. III(a) & IV (a). As a result, both Venable and the Commonwealth had rights under the Agreement that would afford the Commonwealth the ability to acquire temporary custody over Venable for the purpose of obtaining a final disposition on his indictments. Code § 53.1-210 art. IV (a). Here, the Commonwealth promptly filed two detainers with both federal correctional institutions in which Venable was incarcerated after his convictions. Venable was informed of these two detainers when they were lodged, and he did nothing. Once the detainers were "properly lodged" with the appropriate federal authorities and the defendant did not assert his right to trial under the Agreement, "the delay from the filing of the detainer to [Venable's] IAD request for final disposition does not weigh against the Commonwealth." Miller, 29 Va. App. at 633, 513 S.E.2d at 900.

### C. Accused's Assertion of his Right

The third factor is Venable's assertion of his right to a speedy trial. In this instance, we must weigh Venable's failure to cause a written notice and request for final disposition under Article III against him. In addition, while Venable may have written letters to the court, there is no evidence, testimonial or otherwise, that in those letters he asserted his right to a speedy trial. Therefore, we must weigh this factor in favor of the Commonwealth.

"When making a request for final disposition of pending charges under the provisions of the Agreement, a defendant must strictly comply with the procedure established by the Code." Drew v. Commonwealth, 39 Va. App. 224, 227, 571 S.E.2d 928, 930 (2002) (citing Yiaadey v. Commonwealth, 29 Va. App. 534, 541-42, 513 S.E.2d 446, 450 (1999)). In order to request a final disposition of his charges, Venable must give a "written notice and request for final disposition . . .

- 8 -

to the warden, commissioner of corrections or other official having custody of him," and the warden or other official must "forward it together with [a] certificate" listing the terms of Venable's incarceration "to the prosecuting officer and the appropriate court." Code § 53.1-210 art. III (a) & (b). Otherwise, the Commonwealth cannot obtain custody of the accused from the sending state unless the Commonwealth requests a transfer under Article IV of the Agreement.

Here, Venable did not request a final disposition of his indictments. While Venable was incarcerated at a federal correctional institution in West Virginia, the Commonwealth filed a detainer with that institution. Venable contacted the court in Martinsville, Virginia but it informed him that he did not have any outstanding charges. Venable was transferred to a federal correctional institution in Michigan, and the Commonwealth lodged a detainer against him there too. According to Venable's testimony, he wrote to the court to inquire into his detainer and the court wrote back and informed him that he "had no pending charges or detainers."

Viewing the evidence in the light most favorable to Venable, Venable suspected that he had been indicted in the Commonwealth, but he knew the Commonwealth lodged a detainer against him in West Virginia and in Michigan, and he failed to cause a written notice and request for final disposition to be sent to the prosecuting officer and the court. Indeed, according to Venable's testimony, all he did was send a letter to the circuit court clerk's office to inquire whether he had any charges. In that letter, he never requested a final disposition of any pending charges against him.

There is no evidence in the record regarding how Venable came to be in the custody of the Commonwealth of Virginia. The record merely indicates that Venable sent the court some paperwork in October of 2008. A copy of that paperwork was not included in the record. However, simply sending paperwork to the court is an inadequate request for final disposition under the Agreement. Because he is required to strictly comply with the written notice and request

requirements of Article III of the Agreement, we must conclude that he failed to take advantage of his ability to request a final disposition of his state indictments under the Agreement. Yiaadey, 29 Va. App. at 544, 513 S.E.2d at 451.

Moreover, there is no evidence in the record that suggests that Venable asserted his right to a speedy trial by any other means. Because the content of his letter to the court did not include an assertion of his right to speedy trial, but a mere inquiry into the existence or nonexistence of charges, we cannot say from the record that Venable asserted his right to a speedy trial.[4] While Venable may have intended to assert his right to a speedy trial by sending the court letters, that does not excuse his failure to actually do so.[5] Thus, we weigh this factor in favor of the Commonwealth, and against Venable. However, the reason why Venable never requested a final disposition of any charges is likely because the circuit court twice informed him that there were no outstanding charges against him in the City of Martinsville. Thus, "because of the mitigating circumstances, we assign it only negligible weight." Holliday, 3 Va. App. at 619, 352 S.E.2d at 366.

### D. Prejudice

The fourth factor, prejudice to the defendant, "should be assessed in the light of the interest of defendants which the speedy trial right was designed to protect." Barker, 407 U.S. at 532. Here, the trial court did not identify any prejudice to Venable such as a "lengthy pretrial incarceration,"

---

[4] Only one of Venable's letters was included in the record. According to Venable's testimony, the letter in the record coincides with the time period in which he sent his second letter. When he testified about the second letter, he stated "I wrote the courts again and they once again said I did [not] have no [sic] charges." Given the absence of the first letter from the record and Venable's description of both letters, we have no reason to believe that the content of the two letters was different.

[5] In Miller, we recognized that even though Miller wrote a post-detainer letter, that letter did not request a disposition but, rather, declared an intention 'to file for dismissal of all charges.'" Miller, 29 Va. App. at 633, 513 S.E.2d at 901. Thus, here, unless the content of the letter requests a final disposition of his indictments or in some way asserts his right to a speedy trial, we cannot consider the letter, in and of itself, to be an assertion of Venable's Sixth Amendment right to speedy trial.

"loss of memory," "loss of a job," "disrupt[ion] of family life," or "enforce[ment] of idleness." Id. Nor did the trial court identify any facts that might suggest that because of the delay, Venable would be unable to "gather evidence, contact witnesses, or otherwise prepare his defense," which "skews the fairness of the entire system." Id. at 532-33. Rather, the trial court found that Venable had suffered a prejudice because "[h]ad the trial taken place before [his federal convictions], the sentencing guidelines would, in all likelihood, have recommended a lesser sentence than they would now."

We disagree with the trial court's determination that the possibility that Venable's sentence would be increased under the guidelines is a prejudice for two reasons: (1) sentencing guidelines are merely discretionary and not mandatory, and (2) Venable was in federal custody and, as stated above, before his federal convictions "Virginia had no right to his custody." Williamson, 13 Va. App. at 660, 414 S.E.2d at 611.

First, we note that sentencing guidelines in Virginia are not mandatory; they are discretionary. Code § 19.2-298.01. "Under that statute, the circuit court was required only to consider the sentencing guidelines before sentencing [Venable] and to file with the record of the case a written explanation of any departure from the indicated range of punishment." West v. Dir., Dep't of Corr., 273 Va. 56, 65, 639 S.E.2d 190, 196 (2007) (in a habeas petition, our Supreme Court noted that because the sentencing guidelines are discretionary, West was not prejudiced by the ineffectiveness of his counsel). Thus, like our Supreme Court in West, we must reject Venable's argument that his federal felony conviction would increase his sentencing guidelines for his state convictions. Indeed, it is equally as plausible that the trial court would consider Venable's lengthy federal sentence in mitigation of his state sentence and, as a result, run the two wholly or partially concurrent. Therefore, we must reject Venable's argument that delaying his state trial until after his federal conviction results in some prejudice.

Second, as we noted above, Venable was incarcerated in federal custody awaiting his federal trial from August of 2005 until December of 2006. During that time, the Commonwealth had no right to custody of Venable. Wilkinson, 180 Va. at 326, 23 S.E.2d at 358; Williamson, 13 Va. App. at 660, 414 S.E.2d at 611. As discussed above, the first opportunity that the Commonwealth had to obtain temporary custody over Venable was after his federal convictions in December of 2006. Thus, even if the Commonwealth attempted to bring Venable to trial earlier under the Agreement, the earliest it could do so would be after December of 2006 and his sentencing guidelines would inevitably reflect his federal convictions.

Therefore, from the record before us, we cannot find any evidence of prejudice to Venable resulting from the delay.

### III. CONCLUSION

Thus, while the three-year and seven-month delay warrants further review, the Commonwealth had a legitimate reason for the delay. Further, we weigh the third factor, the defendant's assertion of his right, against Venable because he failed to follow the proper procedures under the Agreement for requesting a final disposition of his indictments or otherwise assert his right to speedy trial. Nevertheless, we assign negligible weight to the defendant's failure to assert his right to a speedy trial because the court twice informed him that the charges did not exist. Finally, the lack of prejudice to Venable weighs in favor of the Commonwealth and, in light of the weight assigned to the first three factors, requires us to conclude that Venable's right to speedy trial has not been violated. Therefore, we reverse the trial court's order dismissing the indictments against Venable, and remand for further proceedings consistent with this opinion.

Reversed and remanded.