983 F.2d 563
 Dexter Drake COFFIN, III; Doe; Joe,*
Petitioners-Appellees,
v.
Edward W. MURRAY; Director, Virginia Department of
Corrections; E.C. Morris, Deputy Director, Virginia
Department of Corrections; Lou Ann White, Manager,
Classification and Records Unit, Court and Legal
Services, Virginia Department of Corrections; Unknown
Administrative Personnel, Virginia Department of
Corrections, Respondents-Appellants.
Dexter Drake COFFIN, III; Doe; Joe, Petitioners-Appellants,
v.
Edward W. MURRAY; Director, Virginia Department of
Corrections; E.C. Morris, Deputy Director, Virginia
Department of Corrections; Lou Ann White, Manager,
Classification and Records Unit, Court and Legal Services,
Virginia Department of Corrections; Unknown Administrative
Personnel, Virginia Department of Corrections, Respondents-Appellees.
 Nos. 92-6630, 92-6631.
 United States Court of Appeals,
Fourth Circuit.
 Argued Oct. 2, 1992.
Decided Dec. 16, 1992.
As Amended Jan. 22, 1993.
 
 Reneen Evat Hewlett, Asst. Atty. Gen., Office of the Atty. Gen., Richmond, VA, argued (Mary Sue Terry, Atty. Gen. of Virginia, William R. Coleman, Asst. Atty. Gen., Office of the Atty. Gen., on brief), for respondents.
 Dexter Drake Coffin, III, petitioner pro se, argued.
 Steven David Rosenfield, Charlottesville, VA, argued for petitioners.
 Before WILKINSON, NIEMEYER, and LUTTIG, Circuit Judges.
 OPINION
 LUTTIG, Circuit Judge:
 
 
 1
 The Director and other officials of the Virginia Department of Corrections appeal from the judgment of the United States District Court for the Western District of Virginia granting writs of habeas corpus and declaratory and injunctive relief to appellees Dexter D. Coffin, III, Doe, and Joe, inmates confined within the Virginia Department of Corrections system. The district court held that appellees' Fourteenth Amendment rights were abridged by appellants' misinterpretation of a Virginia prison statute governing the application of extraordinary credits. We conclude that appellants properly interpreted and applied the Virginia statute and that appellees thus were not deprived of any liberty interests protected by the Fourteenth Amendment. We therefore reverse.
 
 I.
 
 2
 The relevant facts are undisputed. From 1987 through mid-1988, appellees Coffin, Doe, and Joe were confined at the Augusta Correctional Center. During that time, they cooperated with Virginia and Maryland law enforcement authorities in a murder investigation which led to the conviction of the individual suspected by the authorities. In return for their cooperation, the Virginia Board of Corrections, with the consent of the Governor, awarded each of the appellees a 36-month extraordinary service credit pursuant to section 53.1-191 of the Virginia Code. The credits were awarded on July 16, 1990. App. at 217-19. At that time, Coffin was on parole, having been released on August 4, 1989. See infra note 12. Doe and Joe, however, were still in prison, where they remain today. The Department of Corrections [the DOC] thereafter applied the extraordinary credits to appellees' terms of confinement in accordance with its standard procedures for implementing section 53.1-191. See discussion infra Part II.B; see also Appellants' Br. at 5.
 
 
 3
 Appellees unsuccessfully sought administrative and state habeas corpus relief on a claim that they effectively had received only half of the value of the credits,[1] after which they filed this action in federal district court against appellants Edward W. Murray, E.C. Morris, and Lou Ann White[2] under 28 U.S.C. § 2254 and 42 U.S.C. § 1983. They alleged inter alia that the Board of Corrections' award of extraordinary credits created a liberty interest cognizable under the Fourteenth Amendment, which had been abridged by the DOC's unlawful interpretation and implementation of section 53.1-191. Both parties filed motions for summary judgment. App. at 73, 118.
 
 
 4
 Following a hearing on these motions, a federal magistrate judge sitting by agreement of the parties pursuant to 28 U.S.C. § 636(b)(1)(A) granted summary judgment in appellees' favor. The magistrate judge held that appellees were entitled to writs of habeas corpus and declaratory and injunctive relief under section 1983 and ordered the DOC to recalculate the terms of confinement under the interpretation of section 53.1-191 advanced by appellees. App. at 55-71.[3] The DOC officials appealed directly to this court on the authority of 28 U.S.C. § 636(c)(3).[4]
 
 II.
 A.
 
 5
 Prisoners within the Virginia Department of Corrections system may earn, through good behavior, two types of credits against their maximum terms of confinement--extraordinary credits and good conduct allowance [GCA] credits. Section 53.1-199 of the Virginia Code authorizes the award of GCA credits. The award of extraordinary credits is authorized by section 53.1-191, which states in relevant part that
 
 
 6
 [t]he Board [of Corrections], with the consent of the Governor, may allow to any prisoner confined in a state correctional facility a credit toward his term of confinement if he ... voluntarily or at the instance of a prison official renders ... extraordinary services....
 
 
 7
 Except as provided hereafter, any credit allowed under the provisions of this section shall be applied as provided in § 53.1-199....
 
 
 8
 Va.Code § 53.1-191 (emphasis added). By the terms of section 53.1-191, therefore, extraordinary credits are to be applied in the same manner as are GCA credits under section 53.1-199. Under section 53.1-199, GCA credits, which may "not ... exceed the amount set forth in § 53.1-201,"[5] are to be applied "to reduce the person's maximum term of confinement while he is confined in any state correctional facility." Va.Code § 53.1-199 (emphasis added).[6]
 
 
 9
 Both extraordinary and GCA credits directly affect the DOC's computation of a prisoner's mandatory parole release date (MPRD). The MPRD "is the date upon which an inmate must be released to the supervision of the Division of Community Corrections [i.e., the parole board]." App. at 182, p 16 (stipulation of parties). Each prisoner's MPRD is initially set six months prior to the end of his sentence pursuant to section 53.1-159 of the Virginia Code, which requires that all prisoners serve a minimum of six months of mandatory parole before final discharge, unless they represent a danger to the community.[7]
 
 
 10
 GCA and extraordinary credits advance a prisoner's MPRD by shortening the amount of time he must serve before being released on mandatory parole. For example, as a prisoner earns GCA credits, the DOC recalculates his MPRD by "subtracting" from the prisoner's initial MPRD the sum of the credits already earned and the estimated number of credits the prisoner would earn were he to remain in the same GCA class for the duration of his confinement. Because a prisoner can earn or lose GCA credits, or change GCA class,[8] day-to-day, see supra notes 5-6, and may also earn non-forfeitable extraordinary credits, his MPRD can change from one day to the next, and it is never permanently fixed until the day it is reached.[9] As appellants note, the MPRD is "merely a projection." Appellants' Reply Br. at 10.[10]
 
 B.
 
 11
 The DOC's standard procedure for implementing sections 53.1-191 and 53.1-199, which was followed when applying the extraordinary credits earned by appellees, is as follows. Because the DOC defines the "maximum term of confinement" as being the prisoner's original sentence, see App. at 78; Appellants' Reply Br. at 12, the DOC first determines the number of days remaining on the extraordinary credit recipient's original sentence as of the date the credit was received. From this total, the DOC subtracts 182 days, which represents the six-month mandatory parole period required by section 53.1-159. App. at 84, 97.[11] Once it has determined the number of days that remain to be served by the prisoner before he must be released on parole, the DOC subtracts from that figure the number of days of extraordinary credit that have been awarded. Id. The remainder is the number of days the prisoner would have to serve before being released under the terms of section 53.1-159, in the absence of GCA credits already earned or projected to be earned based upon the prisoner's GCA class.
 
 
 12
 From this figure, the DOC subtracts any GCA credits already earned. It then multiplies the balance by a "projection factor," which is the reciprocal of the multiple applicable to the particular prisoner's GCA class. See generally supra note 5. The resulting product is the number of days the prisoner has to serve before he must be released on parole, provided that he both remains in his current GCA class and does not forfeit any of the GCA credits he has earned or is projected to earn. Finally, the DOC "adds" this number of days to the date the extraordinary credit is received, with the resulting date being the prisoner's new MPRD.[12]
 
 
 13
 The DOC's application of appellee Doe's extraordinary credit is illustrative of the Department's procedure. On July 16, 1990, Doe had 4,496 days remaining to serve on his original sentence. The DOC subtracted 182 days, reflecting the mandatory six-month parole period required by section 53.1-159. From the remainder of 4,314 days, the DOC subtracted 1,096 days (36 months), the amount of the extraordinary credit earned by Doe. This left Doe with 3,218 days to serve until he would be eligible for mandatory parole, in the absence of any GCA credits. The DOC then multiplied this figure by the projection factor for Doe's GCA class, Class I, which is 0.5 (the reciprocal of the multiple for GCA Class I, which is two) and arrived at 1,609 days. By serving this number of days he would also earn 1,609 days of GCA credit and would thereby reach his MPRD, provided that he remains in GCA Class I and does not forfeit any GCA credits. App. at 84.
 
 III.
 
 14
 Having outlined the statutory framework and the DOC procedure at issue, we turn to the contentions of the parties. Appellees' principal argument is that the DOC's application of their 36-month extraordinary credits deprived them of half of the value of those credits because, even though it reduced their sentences by the full 36 months, it advanced their MPRDs by only 18 months. Appellees' Br. at 13. Appellants do not deny the latter assertion; they claim simply that their procedure for applying credits comports with the plain terms of the relevant statute. The resolution of this dispute thus turns on the meaning of the phrase "maximum term of confinement" in section 53.1-199, because it is the maximum term of confinement that the DOC is instructed to reduce through its application of extraordinary credits. See Va.Code §§ 53.1-191, 53.1-199. The DOC interprets the phrase to mean the prisoner's original sentence, while the appellees assert, and the magistrate judge agreed, that the phrase refers to the prisoner's MPRD. See App. at 60-62.
 
 
 15
 As a federal tribunal, we must be especially careful not to interfere unnecessarily with the administration of Virginia's prison system. If the DOC has rationally implemented the relevant statutes, the constitutionality of which is not questioned, we must defer to its interpretation. See Peyton v. Williams, 206 Va. 595, 145 S.E.2d 147, 151 (1965) ("The elementary rule of statutory interpretation is that the construction accorded a statute by public officials charged with its administration and enforcement is entitled to be given weight by the court[s]."); see also McGinnis v. Royster, 410 U.S. 263, 93 S.Ct. 1055, 35 L.Ed.2d 282 (1973); Wolff v. McDonnell, 418 U.S. 539, 557, 94 S.Ct. 2963, 2975, 41 L.Ed.2d 935 (1974) (state prison good conduct credit statute created rights that could not be arbitrarily abrogated, but those rights are strictly defined by the statute that provided for them).
 
 
 16
 We conclude that the DOC is well within its discretion as the implementing agency of Va.Code §§ 53.1-191, 53.1-199 in interpreting these provisions in the manner that it has. See Peyton, supra. As appellants observe, "[t]he maximum term of confinement can only be the maximum amount of time that an inmate may remain imprisoned upon his sentence." Appellants' Reply Br. at 12. While few Virginia state prisoners serve their entire sentence in prison because of the six-month mandatory parole provision found in section 53.1-159, a prisoner can be confined for the duration of the term of his sentence under certain circumstances. See, e.g., Va.Code § 53.1-159; supra note 7. Because confinement for the duration of a sentence, but not beyond this term, is possible, a prisoner's sentence necessarily represents his maximum term of confinement.[13]
 
 
 17
 The amount of time until a prisoner reaches his MPRD cannot represent the maximum term of confinement because the maximum term of confinement, by definition, must be a period certain. The MPRD, as noted supra note 10 and accompanying text, is, until the day it is reached, merely a projection based upon the assumptions that the prisoner will remain in the same GCA class, that he will not lose any earned GCA credits and that he will not acquire any additional extraordinary credits. Indeed, as appellees themselves stipulated, App. at 182, p 18, even if these assumptions hold true, the prisoner may never be released on mandatory parole under Va.Code § 53.1-159, because that section provides that the Board of Corrections may delay up to six months the release of any prisoner if it has "reasonable cause" to believe that, if released, he will pose a danger to another individual. See supra note 7. And even if he is released on his MPRD, he may be reconfined for violation of the terms of his parole. See Va.Code § 53.1-165 ("The Board, in its discretion, may revoke the parole and order the reincarceration of the prisoner for the unserved portion of the term of imprisonment originally imposed upon him...."); Va.Code § 53.1-159 ("No person released on parole pursuant to this section, whose parole is subsequently revoked, shall thereafter be released on parole pursuant to this section.") (emphasis added).[14]
 
 
 18
 Appellees argue that the correctness of their interpretation of the phrase "maximum term of confinement" is confirmed by the fact that appellants apply GCA and extraordinary credits differently--the former against the prisoner's MPRD and the latter against his original sentence--despite the requirement under sections 53.1-191 and 53.1-199 that they be applied identically. The implicit premise of this argument appears to be that GCA credits are applied properly and therefore that extraordinary credits are necessarily applied improperly. We are satisfied, however, that the DOC applies the two types of credit in the same way, as required by the statute. It bases all MPRD calculations initially on a prisoner's original sentence, less the mandatory parole period, see supra note 11. Any time a new MPRD is calculated, whether because of an extraordinary credit award or a GCA change, the original sentence serves as the base period against which all extraordinary and GCA credits are applied. The only difference in treatment of the two types of credits is that GCA credits are projected, whereas extraordinary credits are not. This difference in treatment, however, is attributable to the different statutory characteristics of the two types of credit; namely, extraordinary credits are irrevocable, but GCA credits are not. See Va.Code § 53.1-189; supra note 6.
 
 
 19
 Indeed, that appellees' MPRDs were advanced by only 18 months rather than by 36 months, the amount of their extraordinary credits, is the natural product of the interplay of these two separate credit programs, one whose credits are certain and one whose credits can only be projected. The appellees were in GCA Class I on July 16, 1990, and therefore were projected to serve in confinement only one-half of the time remaining on their sentences less their mandatory parole reductions,[15] and to satisfy the balance of their sentences with the GCA credits they were projected to earn during that confinement.[16] That is, they were projected to earn two months toward completion of their sentences for every one month served in confinement. Because the period between the date an extraordinary credit is awarded and the MPRD is the amount of time that a prisoner must serve in confinement to satisfy his sentence, and because appellees were satisfying two months of their sentences every month they were confined, their MPRDs were advanced as a result of the extraordinary credits by half the amount of the 36-month sentence reductions, or 18 months.[17]
 
 
 20
 It may be the case, as appellees assert, that the tangible benefit, i.e., freedom from confinement, that a prisoner receives from an extraordinary credit is inversely related to the prisoner's GCA class. For example, were the appellees to forfeit all of their GCA credits and be demoted to GCA Class IV, earning no GCA credit for time served in confinement, they would indeed be released 36 rather than 18 months early as a result of the extraordinary credits they were awarded on July 16, 1990. This does not mean, however, that the appellants are misapplying section 53.1-199. If anything, it merely reveals that the incentives to conduct oneself in such a manner as to earn extraordinary credits are not uniform across the four GCA classes, a disparity that must be addressed, if at all, by the Virginia General Assembly.
 
 IV.
 
 21
 Appellants did not violate the requirement of Va.Code §§ 53.1-191, 53.1-199 that extraordinary credits be applied to reduce a prisoner's "maximum term of confinement" when they applied the credits so as to reduce appellees' sentences, rather than their MPRDs. Therefore, appellees were not deprived of their liberty in violation of the Fourteenth Amendment. The decision of the magistrate judge is reversed to the extent that it afforded appellees relief under 28 U.S.C. § 2254 and 42 U.S.C. § 1983, and the appellees' cross-appeal is dismissed.
 
 
 22
 No. 92-6630--REVERSED.
 
 
 23
 No. 92-6631--DISMISSED.
 
 
 
 *
 After decision of these appeals but before final publication of the Court's opinion, two of the appellees moved the Court that they be referred to in the opinion by the pseudonyms "Doe" and "Joe." The Court granted the motion by order filed January 19, 1993
 
 
 [1]
 Appellees' habeas petitions were summarily denied by the Virginia Supreme Court
 
 
 [2]
 Murray and Morris are, respectively, the Director and Deputy Director of the DOC. White is the DOC's Classification and Records Unit Manager
 
 
 [3]
 The magistrate judge denied appellees' claim for monetary damages, holding that appellants were entitled to qualified immunity. Id. at 64-67
 
 
 [4]
 No. 92-6630. Appellees cross-appealed in No. 92-6631 on the question of whether the magistrate judge erred in refusing to grant monetary damages. See supra note 3. Because of our disposition of No. 92-6630, we dismiss the cross-appeal
 
 
 [5]
 Section 53.1-201 establishes a classification system, which in turn defines the number of GCA credits that a particular prisoner may earn. Based on their behavior, prisoners are assigned to one of four GCA classes. For every thirty days an inmate serves, he receives credit for serving some multiple of thirty days, depending upon his classification. Thus, prisoners in the highest class, GCA Class I, earn thirty additional days of good conduct credit for every thirty days actually served in prison--a multiple of two. Prisoners in GCA Class II earn twenty days, and those in GCA Class III earn ten days, of credit for every thirty days served. Prisoners in the lowest class, GCA Class IV, earn no extra credit for time served. At any time, prisoners may be promoted or demoted in GCA class depending on their behavior and other related factors
 It is undisputed that at the time they were awarded their extraordinary credits, all three appellees were in GCA Class I.
 
 
 [6]
 Although by operation of section 53.1-191 extraordinary credits are applied in the same manner as are GCA credits, there is a critical respect in which the two forms of credits are different. Extraordinary credits are not subject to forfeiture, but a prisoner may forfeit his GCA credits by violating prison rules or regulations, and shall forfeit all GCA credits if convicted of escape or attempted escape. Va.Code §§ 53.1-189 A., B., 53.1-191
 
 
 [7]
 If within thirty days of a prisoner's scheduled release on mandatory parole new information is provided to the Board of Corrections "which gives the Board reasonable cause to believe that the release poses a clear and present danger to the life or physical safety of any person, the Board may delay the release for up to six months...." Va.Code § 53.1-159. It is therefore possible for a prisoner to serve his entire sentence in prison. See App. at 45
 
 
 [8]
 If a prisoner receives a higher GCA classification, he retains the credits he earned while in the lower class but thereafter earns credits at the rate specified in his new class. App. at 184, p 31; see also Appellees' Br. at 15. The retained credits are still subject to forfeiture
 
 
 [9]
 Each time an event occurs that alters a prisoner's MPRD, such as a change in GCA class or the forfeiture of GCA credits because of a prison rule violation, the DOC provides the prisoner with a computerized "Legal Update" apprising him of the change, and from which he may calculate the final day of his sentence. The Legal Updates recite inter alia the prisoner's total sentence and the starting date of that sentence. See App. at 196-97. The appellees' suggestion, see Appellees' Reply Br. at 19, that the MPRD is "the only date of substance" found on an Update is, therefore, incorrect
 
 
 [10]
 Appellees vigorously dispute the characterization of MPRDs as "projections." They contend that the word "projected" nowhere appears on the Legal Updates. Appellees' Reply Br. at 12, 17. At least some of the Legal Updates, however, specifically recite that the information they provide is "projected and ... subject to change." See, e.g., App. at 196 (Legal Update for appellee Doe) (emphasis added). Because prisoners know that they can earn proportionately more GCA credits through promotion into a higher GCA class and lose credits through forfeiture, two occurrences which will cause a recalculation of the MPRD, however, there can be little question that prisoners understand that at any given moment their MPRD is only a projection. See, e.g., Appellees' Br. at 15 & n. 9; Appellees' Reply Br. at 17
 
 
 [11]
 By subtracting the 182 days representing a prisoner's anticipated mandatory parole, the DOC appears almost to concede that a prisoner's maximum term of confinement is the length of his sentence, less 182 days. We question whether the DOC is required to deduct the 182-day mandatory parole time, given that it too, like GCA credits, is subject to forfeiture, see supra note 7
 
 
 [12]
 The DOC undertook a similar procedure in appellee Coffin's case, although his circumstance was different from that of Doe and Joe in that he was already on parole when he received the extraordinary credit. Instead of advancing Coffin's MPRD, the DOC applied the credit to advance his parole expiration date. See App. at 76-77. We question, as appellants now apparently do, see Appellants' Reply Br. at 14, whether Coffin was statutorily eligible for any kind of reduction, given that he was on parole at the time that the credits were applied. Section 53.1-199 specifically states that credits are to be applied to reduce a person's maximum term of confinement "while he is confined in any state correctional facility." We do not address this issue, however, because it was not properly raised, if raised at all
 
 
 [13]
 Appellees obviously recognize the tension, if not direct conflict, between their interpretation and the language of section 53.1-199. Throughout their submissions, they quote the statute as requiring the DOC to reduce a prisoner's "term of confinement," rather than his "maximum term of confinement." See, e.g., Appellees' Br. at 14, 16; Appellees' Reply Br. at 15, 18
 
 
 [14]
 If appellees' interpretation were correct, Virginia prisoners would effectively receive twice the amount of every extraordinary credit. Since every day a GCA Class I prisoner serves in confinement advances his MPRD one day but satisfies two days of his sentence, advancing that prisoner's MPRD by the full amount of an extraordinary credit would effectively reduce his sentence by twice the amount of the credit awarded
 
 
 [15]
 Appellee Coffin was treated by the appellants as being in confinement for purposes of applying his extraordinary credit because he was on supervised parole; he was not, of course, confined in a state correctional facility on July 16, 1990. See supra note 12
 
 
 [16]
 For this reason, each appellee's MPRD was the date approximately halfway through the period of time remaining on his sentence
 
 
 [17]
 This effect of a 36-month sentence reduction on Class I prisoner MPRDs is illustrated by the following example. A prisoner in GCA Class I with 10 years remaining on his sentence would have to serve only 5 years in confinement to satisfy that sentence; in other words, his MPRD would be reached in only 5 years, barring any changes in his credits. If that prisoner receives a 36-month extraordinary credit, the DOC reduces his sentence by 36 months, to seven years. In GCA Class I, the prisoner will satisfy that sentence in 3 1/2 years and therefore his MPRD will be in 3 1/2 years. The MPRD will have advanced 18 months because of the 36-month extraordinary credit