## Alexandria
## NEIL E. BEACHEM
### v.
## COMMONWEALTH OF VIRGINIA
No. 0464-88-4
Decided April 3, 1990

126

COUNSEL

R. Dean Kidwell (James B. Slaughter, on brief), for appellant.

Linwood T. Wells, Jr., Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellee.

OPINION

DUFF, J.—Neil E. Beachem appeals his convictions for robbery and unlawful display of a firearm while committing a felony. The crimes in question were committed on July 16, 1982, and a warrant for appellant's arrest was issued on July 19, 1982. It was not until January, 1988, over five years later, that the appellant was

brought to trial. Beachem asserts that the five and one-half year delay between the issuance of the warrant and the date of his trial violated his rights to a speedy trial under the sixth amendment of the United States Constitution and article 1, section 8 of the Virginia Constitution. We disagree and affirm the judgment of the circuit court.

Subsequent to the issuance of the warrant against the appellant, the Commonwealth learned that he was incarcerated at the Maryland Correctional Training Center in Hagerstown, Maryland, serving a ten year sentence for offenses committed in that state. The Commonwealth's Attorney, acting pursuant to the terms of the Interstate Agreement on Detainers (IAD), article IV, filed a detainer with the Training Center in the form of a copy of the arrest warrant. The appellant, upon learning of the existence of the warrant, made an oral request to his Maryland classification counselor to institute the proceedings necessary to reach a final disposition of the Virginia charges. This request was made on November 17, 1982.

No immediate action was taken on the oral request. On November 26, 1982, and again on December 14, 1982, appellant sent letters to his Maryland counselor asking that his request for disposition of the Virginia charges be withdrawn and indicating his intent to resist extradition. The counselor complied with appellant's wishes and sent certified copies of these letters to the State's Attorneys' office in Maryland.

On October 21, 1983, appellant filed a petition for a writ of habeas corpus in the Fairfax County Circuit Court, asserting that he was being denied his right to a speedy trial, that he had no burden to produce himself for his trial, and moved the court to dismiss the detainer of November 1, 1982. The Attorney General's office responded to the petition by filing a demurrer.

On January 30, 1984, appellant, acting pro se, filed a petition for writ of mandamus in the Supreme Court of Virginia, requesting a hearing on his habeas corpus petition. The Attorney General responded with a motion to dismiss, to which appellant filed pro se an amended response. On December 12, 1984, the Virginia Supreme Court dismissed appellant's petition for a writ of mandamus.

The record further reveals that on November 21, 1983, the Commonwealth executed a request for temporary custody pursuant to article IV of the IAD. Maryland officials did not receive this request until one year later, and the record contains no explanation for this delay. On November 23, 1984, appellant's new classification counselor showed him the November 21, 1983 custody request. At appellant's instruction, the counselor informed the Commonwealth's Attorney's office that the appellant did "not wish to waive his extradition rights or file for a speedy trial."

Nothing further occurred until the classification counselor wrote the Commonwealth Attorney's office on October 25, 1985, requesting that appellant be advised when the charges against him would be adjudicated. In response to this letter, the Commonwealth, on December 20, 1985, issued another request for temporary custody under the provisions of the IAD.

On March 10, 1986, appellant's counselor once again requested information concerning adjudication of the charges, and on April 1, 1986, she received a letter from the Commonwealth, along with a copy of the second request for temporary custody. She showed these documents to appellant, who informed her that he still intended to resist extradition.

Finally, in June, 1986, an extradition hearing was held in Maryland. Extradition was granted and appellant appealed the decision to the Maryland appellate courts. All appeals were denied and Beachem was returned to Fairfax County on November 4, 1987. His trial commenced January 19, 1988.

## I.

The Interstate Agreement on Detainers, Code §§ 53.1-210 through 53.1-215, was enacted, in part, to aid in alleviating the "uncertainties which obstruct programs of prisoner treatment and rehabilitation" resulting from, among other things, the "difficulties in securing speedy trials of persons already incarcerated in other jurisdictions." *See* Code § 53.1-210., art. I. The IAD encourages the expeditious disposition of criminal charges against out-of-state prisoners, and provides cooperative procedures among member states to facilitate such disposition. The relevant portions of Code § 53.1-210 were summarized by the United States Supreme Court in *United States v. Mauro*, 436 U.S. 340 (1978),

as follows:

> Article III provides a procedure by which a prisoner against whom a detainer has been filed can demand a speedy disposition of the charges giving rise to the detainer. The warden of the institution in which the prisoner is incarcerated is required to inform him promptly of the source and contents of any detainer lodged against him and of his right to request final disposition of the charges. Art. III(c). If the prisoner does make such a request, the jurisdiction that filed the detainer must bring him to trial within 180 days. Art. III(a). The prisoner's request operates as a request for the final disposition of all untried charges underlying detainers filed against him by that State, Art. III(d), and is deemed to be a waiver of extradition. Art. III(e).

> Article IV provides the means by which a prosecutor who has lodged a detainer against a prisoner in another State can secure the prisoner's presence for disposition of the outstanding charges. Once he has filed a detainer against the prisoner, the prosecutor can have him made available by presenting to the officials of the State in which the prisoner is incarcerated "a written request for temporary custody or availability . . . ." Art. IV(a).

*Id.* at 351-52 (footnotes omitted).

■ The provisions of the IAD serve the dual purposes of safeguarding the rights of a criminal defendant and providing the states with a means of seeking justice in a swift and efficient manner. When these provisions are disregarded, or negligently ignored, delayed prosecution and infringement of the prisoner's sixth amendment right to a fair and speedy trial may occur. In such cases, courts must determine whether the delay has been so substantial as to have infringed the prisoner's constitutional rights. We must determine whether the appellant in this case was deprived of his constitutional rights to a speedy trial.

## II.

A speedy trial is guaranteed an accused by the Sixth Amendment and article 1, section 8 of the Virginia Constitution.[1] The Supreme Court has held that this right "is as fundamental as any of the rights secured by the Sixth Amendment." *Klopfer v. North Carolina*, 386 U.S. 213, 223 (1967). At the same time, however, we must recognize that state governments have a compelling interest in seeking justice by a measured judgment of the facts in each particular case. "Thus, unlike the right to counsel or the right to be free from compelled self- incrimination, deprivation of the right to speedy trial does not *per se* prejudice the accused's ability to defend himself." *Barker v. Wingo*, 407 U.S. 514, 521 (1972). Instead, each case should be examined individually to determine the extent of the defendant's harm, if any, and whether that harm merits dismissal of the charges. The defendant's right to speedy trial is "necessarily relative . . . . It does not preclude the rights of public justice." *Beavers v. Haubert*, 198 U.S. 77, 87 (1905).

A balance must be maintained to properly protect the interests of all parties involved. Accordingly, a defendant's constitutional speedy trial claim requires a "functional analysis of the rights in the context of the particular facts of this case." *Holliday v. Commonwealth*, 3 Va. App. 612, 616, 352 S.E.2d 362, 364 (1987). Balanced in this analysis is the conduct of both the prosecution and the defendant, the relative degree of fault to be attributed to that conduct, and the consequences of the remedies requested.

## III.

In approaching this task, we receive guidance from the Supreme Court's decision in *Barker v. Wingo*, 407 U.S. 514 (1972), as well as our own application of the rules found therein

---

[1] The Sixth Amendment provides:
In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defense.

in *Holliday*. *Barker* set forth a balancing approach to sixth amendment speedy trial cases and identified four factors which should be assessed in determining whether a particular defendant has been denied his right to a speedy trial. These factors are: (1) length of delay; (2) the reason for the delay; (3) the defendant's assertion of his right to speedy trial, and (4) prejudice to the defendant. 407 U.S. at 530.

Subsequent to *Barker*, the Supreme Court stated that

[t]he speedy trial guarantee is designed to minimize the possibility of lengthy incarceration prior to trial, to reduce the lesser, but nevertheless substantial, impairment of liberty imposed on an accused while released on bail, and to shorten the disruption of life caused by arrest and the presence of unresolved criminal charges.

*United States v. MacDonald*, 456 U.S. 1, 8 (1982). We therefore look to the " 'balancing test' of *Barker* as refined by *MacDonald*." *Holliday*, 3 Va. App. at 616, 352 S.E.2d at 364.

### (1) *Length of Delay*

The first of the *Barker* factors, the length of delay, is properly considered separately from the other three, for if the delay in bringing a defendant to trial is not sufficient to raise at least an inference of injustice, further exploration is unnecessary. When the delay involved becomes "so protracted as to be 'presumptively prejudicial', the first factor becomes a 'triggering mechanism' which necessitates 'inquiry into the other factors that go into the balance.' " *Fowlkes v. Commonwealth*, 218 Va. 763, 766, 240 S.E.2d 662, 664 (1978). There is no bright line time limit that serves to automatically invoke a defendant's right to exploration of the other factors. A defendant must be able to at least raise the presumption that, in his particular case and in his particular circumstance, the delay involved was so detrimental as to have endangered his right to a fair trial. In this case the Commonwealth concedes, and the appellant readily agrees, that the delay was sufficient to trigger further inquiry.

### (2) *Reason for Delay*

Once shown that there has been a delay that is "presumptively prejudicial," the burden "devolves upon the Commonwealth

to show, first, what delay was attributable to the defendant and not to be counted against the Commonwealth and, second, what part of any delay attributable to the prosecution was justifiable." *Fowlkes*, 218 Va. at 767, 240 S.E.2d at 664. It is in consideration of this factor that the intent of the party causing the delay becomes highly relevant. If the prosecution intentionally delays the trial to gain some strategic advantage or to avoid some shortcoming in the case, the delay should be weighed heavily in favor of the defendant. If, on the other hand, there was no such intention, then the degree of negligence of the party causing the delay should be considered and given appropriate weight. *Barker* also noted that different weights should be assigned to different reasons for delay, stating that while deliberate attempts to hamper the defense "should be weighted heavily against the government, negligent conduct. . . should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant." *Barker*, 407 U.S. at 531.

There has been no showing in this case of any deliberate intent on the part of the Commonwealth to delay the trial. The government's conduct in taking steps to bring the appellant to trial was, however, clearly negligent. Accordingly, while this factor is weighted in Beachem's favor, it does not, standing alone, justify the dismissal of criminal charges.

### (3) *Assertion of the Right*

The third prong of the *Barker* standard requires consideration of the presence or absence of the accused's assertion of the right to a speedy trial. In this case, Beachem's requests for a speedy trial were not such as to indicate that he truly desired to be tried. The evidence indicates that he attempted to prevent or delay his coming to trial in Virginia at numerous points in the proceedings. Though deemed to have waived extradition by filing his request under the IAD, he refused to submit to Virginia jurisdiction without the necessity for an extradition hearing, but filed a habeas corpus petition when he was not immediately extradited. When he was served a second notice of the detainer, he again asserted his intent to resist extradition. These are not the actions of a person seeking to obtain a speedy trial.

■ On the other hand, a defendant's right to speedy trial is not wholly dependant upon his assertion of the right. The government has an obligation to take reasonable steps to ensure a defendant's right to a fair and speedy trial whether one is requested or not. Accordingly, while the failure to demand a speedy trial is not a factor which, standing alone, will defeat a constitutional speedy trial claim, nonetheless, it is a factor which will be weighted against the defendant. *Holliday*, 3 Va. App. at 618, 352 S.E.2d at 366.

As noted, the appellant's actions in this particular case are indicative of a person who not only did not desire a speedy trial, but on the contrary, actively sought to avoid one. After having first demanded a speedy trial by way of a pro se habeas corpus action, he specifically stated, through his classification counselor, that he did not wish to assert his right to a speedy trial. At every stage thereafter, the appellant resisted attempts to bring him to trial. The appellant's failure to assert his rights to a speedy trial is a factor which must be weighted in the Commonwealth's favor.

### (4) *Prejudice*

■ Finally, we consider the issue of prejudice. In considering prejudice to the defendant, the *Barker* court identified three types of interests safeguarded by the sixth amendment right to speedy trial: (1) preventing oppressive pretrial incarceration; (2) minimizing anxiety and concern of the accused; and (3) limiting the possibility that the defense will be impaired. *Barker*, 407 U.S. at 532.

In *Holliday*, we noted that a criminal defendant, already incarcerated on other charges may still suffer from "undue and oppressive incarceration prior to trial" as a result of the delay. In *Smith v. Hooey*, 393 U.S. 374 (1969), the Supreme Court noted that, in such circumstances, the defendant would lose the possibility of receiving a sentence at least partially concurrent with the one he is serving. Moreover, in such cases "the duration of his present imprisonment may be increased, and the conditions under which he must serve his sentence greatly worsened by the pendency of another criminal charge outstanding against him." *Id.* at 378.

■ It also is presumed "that the pending unresolved charge against [the appellant] caused him some degree of anxiety and concern. Such anxiety and concern can be presumed to be com-

mon to anyone openly subject to a criminal proceeding." *Holliday*, 3 Va. App. at 620, 352 S.E.2d at 367. However, the impact on the appellant of the unresolved charges against him is somewhat diminished by the fact that, during his imprisonment in Maryland, there were at least three other detainers lodged against him.[2] He since has been sentenced in Missouri to serve eighteen years on charges in that state.

Finally, we deal with impairment to the appellant's defense. We find nothing in the record to support Beachem's contention that his defense was hampered or impaired as a result of the delay. While Beachem makes unsupported allegations that alibi witnesses have moved and were therefore unavailable for trial, he provides no details as to when they moved or of his attempts to locate them. To conclude on this record that Beachem's defense was impaired by the delay in bringing him to trial would require nothing short of sheer speculation on our part. This we decline to do. We conclude that Beacham has failed to demonstrate that his defense was impaired by the delay.

## IV.

The Commonwealth has admitted that it "could have" done better, but has argued that any negligence on the part of the Commonwealth should be "tempered by Maryland's failure to promptly carry out the terms of the Agreement . . . ." We agree with the Commonwealth's concession that it could have made greater efforts to bring Beachem to trial in Virginia. We disagree, however, with the argument that the Commonwealth's negligence should be tempered by the failures of the State of Maryland. Compliance with the guidelines mandated by the Virginia Code and the Interstate Agreement on Detainers is a duty shouldered by each state individually, and one state may not avoid its obligations by placing the blame on another state. The Commonwealth, not the State of Maryland, brought charges against Beachem and while Beachem's conduct may be used to negate the negligence of the Commonwealth, the actions of another jurisdiction may not. The State of Maryland is not responsible for the maintenance of

---

[2] As of December 3, 1984, the appellant had pending against him detainers from the U.S. Marshall, the Annapolis Police Department, and the State of Missouri, as well as the Virginia detainer. It is unlikely that any of these, standing alone, would add to the anxiety of the appellant.

the laws of the Commonwealth of Virginia. This responsibility lies squarely upon Virginia.

## V.

When we consider the facts of this case in accordance with the balancing test mandated by *Barker*, we conclude that the balance must be struck in the Commonwealth's favor. The delay in this case was substantial, but there has been no showing of anything other than negligence on the part of the Commonwealth. Any prejudice flowing from the delay in bringing Beachem to trial is at best speculative. The most compelling factor in this case is the appellant's actions in resisting the Commonwealth's attempts to bring him to trial. Based on the particular facts of this case and the absence of intent by the Commonwealth to delay the trial, we conclude that the appellant's resistance to any attempts to bring him to trial is decisive.

We do not excuse or condone the Commonwealth's negligence in this case. The speedy trial right, however, is not simply a matter of finding "fault" on the part of the government. Based upon the balancing of interests mandated by *Barker*, we find no violation of the appellant's sixth amendment rights.

For the reasons stated above, the convictions of the appellant are hereby

*Affirmed.*

Koontz, C.J., concurred.

Benton, J., dissenting.

"[T]he right to a speedy trial is as fundamental as any of the rights secured by the Sixth Amendment." *Klopfer v. North Carolina*, 386 U.S. 213, 223 (1967).

[I]t is the prosecution which has the responsibility of vindicating society's interests in swift and certain justice; it is the prosecution which has the duty of implementing the constitutional guarantee of a speedy trial; it is the prosecution which has ready access to the data concerning delay attributable to law enforcement personnel and court administrators; and when delay is attributable to the defendant, proof of that

fact poses little problem for the prosecution. . . . [W]hen a defendant challenges the delay as unreasonable, the burden devolves upon the Commonwealth to show, first, what delay was attributable to the defendant and not to be counted against the Commonwealth and, second, what part of any delay attributable to the prosecution was justifiable.

*Fowlkes v. Commonwealth*, 218 Va. 763, 766-67, 240 S.E.2d 662, 664 (1978) (footnote omitted). Unlike the majority, I believe that the four factors used to determine whether Neil E. Beachem's right to a speedy trial has been violated weigh heavily in Beachem's favor. *See Barker v. Wingo*, 407 U.S. 514 (1972).

More than five years elapsed between the Commonwealth's filing of a detainer in the State of Maryland for Beachem and the commencement of a preliminary hearing in Virginia. The Commonwealth concedes that "approximately three and one-half years" is the period of delay for which the Commonwealth must answer. The Commonwealth argues, and the majority accepts, that the failure of the Commonwealth to obtain custody of Beachem and commence his trial was simply negligence. I disagree.

The Commonwealth's detainer was lodged against Beachem in November, 1982. Although both Virginia and Maryland have enacted the Interstate Agreement on Detainers (IAD), *see* Md. Ann. Code Art. 27, § 616A (1986); Code § 53.1-210 (1988), the Commonwealth took no further action during the next ten months to obtain custody of Beachem. Articles IV and V of the IAD provide a mechanism by which the Commonwealth could have obtained custody of Beachem for purposes of trial.

In October 1983, Beachem filed in the Circuit Court of Fairfax County, Virginia (the place of the offense for which he now stands convicted), a petition for a writ of habeas corpus, alleging denial of the right to a speedy trial. The Commonwealth challenged the legal sufficiency of his petition by filing a demurrer. Although the Commonwealth was put on notice of Beachem's speedy trial claim by the habeas action, more than thirteen months elapsed from the time Beachem filed his petition to the date Maryland officials received the Commonwealth's request for custody of Beachem. The Commonwealth subsequently wrote two letters to Maryland officials but took no further substantial action to obtain custody of

Beachem. It was not until 1986 that an extradition hearing was held in Maryland. During this three and one-half year period the Commonwealth also resisted Beachem's attempts to obtain a writ of mandamus to require action on his petition for a writ of habeas corpus.

Thus, even after the question of a speedy trial came to the attention of the Commonwealth in the emphatic form of Beachem's petition for a writ of habeas corpus, the Commonwealth resisted Beachem's attempt to force the Commonwealth to bring him to trial. The Commonwealth sought to thwart Beachem's action in the Fairfax Circuit Court while neglecting its responsibility to obtain his custody in order to commence trial. Having made a demand for release from prosecution because of failure to prosecute in a timely fashion, Beachem had no obligation to ensure the Commonwealth's compliance with the IAD. "The burden of compliance with the procedural requirements of the IAD rests upon the party states and their agents." *Pittman v. State*, 301 A.2d 509, 514 (Del. 1973). " '[T]he ultimate responsibility for [administrative derelictions] must rest with the government rather than with the defendant.' " *Fowlkes*, 218 Va. at 768, 240 S.E.2d at 665 (quoting *Barker*, 407 U.S. at 531).

The United States Supreme Court in *Smith v. Hooey*, 393 U.S. 374 (1969), described as "self-evident" that an incarcerated defendant's "ability to confer with potential defense witnesses, or even to keep track of their whereabouts, is obviously impaired . . . . [A] man isolated in prison is powerless to exert his own investigative efforts to mitigate these erosive effects of the passage of time." *Id.* at 379-80. Beachem proffered for the record that witnesses who owned and operated a motel and who knew him would testify that he was in the motel on the day of the offense. He further stated that those witnesses moved during his incarceration and cannot be located. The long delay in returning Beachem to Virginia and in the appointment of counsel diminished the possibility of locating these witnesses. By his proffer of the absence of his alibi witness, Beachem has demonstrated substantial prejudice which should be weighted heavily in his favor in assessing whether a violation occurred. *See Dickey v. Florida*, 398 U.S. 30, 35-38 (1970).

This record establishes that the Commonwealth failed to discharge its "constitutional duty to make a diligent, good-faith ef-

fort to bring [Beachem to trial]." *Smith*, 393 U.S. at 383. Consequently, the conviction should be reversed and the charges dismissed.