COURT OF APPEALS OF VIRGINIA

Present:  Chief Judge Fitzpatrick, Judge Benton and
          Senior Judge Duff
Argued at Alexandria, Virginia


JAMES FRANK HAYES
                                        MEMORANDUM OPINION[*]
v.      Record No. 1177-97-4           BY JUDGE CHARLES H. DUFF
                                              JUNE 16, 1998
    COMMONWEALTH OF VIRGINIA


              FROM THE CIRCUIT COURT OF FREDERICK COUNTY
                        James L. Berry, Judge

            Roger A. Inger (Travis J. Tisinger; Massie,
            Inger & Iden, P.C.; Harrison & Johnston, on
            brief), for appellant.

            Leah A. Darron, Assistant Attorney General
            (Mark L. Earley, Attorney General, on brief),
            for appellee.



        In a jury trial in Frederick County, James Frank Hayes

(appellant) was found guilty of the first degree murder of his

wife, Lisa Hayes (Hayes).  On appeal, he argues that he was

denied his Sixth Amendment right to a speedy trial.  Finding no

error, we affirm appellant's conviction.

        On appeal, "[w]e review the evidence in the light most

favorable to the Commonwealth.  The factual findings of the trial

court, if supported by credible evidence, will not be disturbed

on appeal."  Williamson v. Commonwealth, 13 Va. App. 655, 656,

414 S.E.2d 609, 609-10 (1992).

        On July 13, 1995, Hayes' dead body was found near her

_____

        [*]Pursuant to Code § 17-116.010, this opinion is not
designated for publication.

wrecked car in a Frederick County creek.  Medical Examiner Dr. Frances Field performed an autopsy on the body on July 14, 1995.  The autopsy report listed drowning as Hayes' cause of death.

On November 9, 1995, appellant was indicted in Frederick County for Hayes' murder, and a March 18, 1996 trial was scheduled.

On March 7, 1996, the Commonwealth moved to nolle prosequi the murder charge.  The prosecutor contended that on February 8, 1996, he was given information indicating that appellant killed his wife at the apartment they shared in the City of Winchester.  Anna Oates had told the police that appellant suffocated his wife with a pillow on the floor of the apartment and later disposed of the body in the Frederick County creek.  The prosecutor stated that until the receipt of this information from Oates, it had appeared that, pursuant to Code § 19.2-247, venue was proper in Frederick County.[1]  Upon questioning by the court, appellant refused to waive the issue of venue and permit trial in Frederick County.  The court granted the Commonwealth's motion to nolle prosequi.

On April 9, 1996, appellant was indicted in Winchester for his wife's murder, and a trial was scheduled for July 1, 1996.

---

[1]Code § 19.2-247 provides that "[w]here evidence exists that a homicide has been committed . . . under circumstances which make it unknown where such crime was committed, the offense shall be amenable to prosecution in the courts of the county or city where the body of the victim may be found, as if the offense has been committed in such county or city."

On June 18, 1996, upon joint motion of the parties, the trial was continued until July 22, 1996. On July 9, 1996, appellant requested, and was granted, a continuance until September 17, 1996.

On September 17, 1996, the Winchester Circuit Court conducted a hearing upon appellant's motion to dismiss due to improper venue. Oates testified that she saw appellant cover Hayes' face with a pillow on the living room floor of appellant's Winchester apartment. Oates assisted appellant by restraining Hayes' legs. Eventually, Hayes stopped struggling and appellant removed the pillow. Oates did not observe Hayes breathing, but did not check her pulse to see if she was still alive. After bathing and redressing Hayes, appellant carried her to the car. Hayes exhibited no signs of life. Appellant drove the car to the embankment of a Frederick County creek. He positioned Hayes in the car and sent the car over the embankment into the creek. Oates testified that she had never seen a dead person before, and she had avoided looking at Hayes as much as possible.

Dr. Field testified that during the autopsy of Hayes' body she found several symptoms that were consistent with an asphyxial death, which could have occurred either by smothering or drowning. She stated that there were no specific autopsy findings which would differentiate between smothering or drowning as the cause of death. Dr. Field noted bruising and pressure marks about Hayes' face and neck which, Dr. Field opined, were

inflicted prior to Hayes' death.  Dr. Field confirmed that it is possible for a person to be asphyxiated to the point of unconsciousness, short of death.

Dr. Cyril Wecht, a forensic pathologist, testified that no autopsy findings exist which are exclusive to death by drowning.  In reviewing Dr. Field's autopsy report, Dr. Wecht noted only a few of the characteristics generally found with a death by smothering.  Based upon the autopsy report, Dr. Wecht could not state the cause of Hayes' death.

The Winchester judge concluded that Frederick County was the proper forum since the cause of Hayes' death could not be determined.  He dismissed appellant's murder indictment without prejudice.

On October 10, 1996, appellant again was indicted in Frederick County for the murder of his wife.  Soon after his indictment, appellant agreed to a trial date of January 31, 1997.  On January 17, 1997, the case was continued upon appellant's motion until March 31, 1997.

On March 21, 1997, appellant filed a motion to dismiss the proceedings as violative of his constitutional right to a speedy trial.  At a hearing on March 27, 1997, Investigator Greg Locke testified that, based upon his preliminary investigation of Hayes' death, he disagreed with the autopsy report and did not believe drowning had caused Hayes' death.  He stated that Oates had first told the police in February of 1996 that appellant

killed his wife at an apartment in Winchester.  Oates had said that Hayes remained motionless on the floor for a long period of time and did not appear to be breathing.  Oates, however, did not check Hayes' vital signs to see if she was still alive.

Locke further testified that he contacted Dr. Field on March 7, 1996 to discuss the autopsy report.  Dr. Field told Locke that she had listed Hayes' death as a drowning because the body was found in a creek.  Locke advised Dr. Field of Oates' statement.  Dr. Field indicated that the signs and symptoms of drowning are the same as suffocation, so that the murder could have occurred in either Frederick County or Winchester.

Appellant contended that his constitutional right to a speedy trial had been violated, arguing that in February of 1996 Locke should have questioned Oates more thoroughly about her observations of Hayes after the suffocation.  Had Locke done so, appellant claimed, the Commonwealth would not have nolle prosequied the original Frederick County charge because the location of Hayes' death would have appeared unclear.  Appellant asserted that five subpoenas for witnesses at trial had been returned as "not found" and that the unavailability of those witnesses was due to the delay in bringing appellant to trial.  Concluding that any delay attributable to the Commonwealth was justifiable, the trial court found that appellant's constitutional speedy trial right had not been violated.

Appellant's trial commenced on March 31, 1997.  A jury found

-5-

him guilty of first degree murder.

In Barker v. Wingo, 407 U.S. 514 (1972), the Supreme Court of the United States, "recognizing the difficulty in evaluating speedy trial claims, adopted a balancing test" which "identified four factors to be assessed by courts in determining whether a particular defendant had been deprived of his speedy trial right: (1) the length of delay; (2) the reason for the delay; (3) the defendant's assertion of his right; and (4) the prejudice to the defendant." Holliday v. Commonwealth, 3 Va. App. 612, 616, 352 S.E.2d 362, 364 (1987). There is, however, no "precise formula for determining when a constitutional right to a speedy trial has been abridged." Moten v. Commonwealth, 7 Va. App. 438, 445, 374 S.E.2d 704, 708 (1988). "Balanced in this analysis is the conduct of both the prosecution and the defendant, the relative degree of fault to be attributed to that conduct, and the consequences of the remedies requested." Beachem v. Commonwealth, 10 Va. App. 124, 130, 390 S.E.2d 517, 519-20 (1990).

The first factor in Barker, the length of the delay, triggers inquiry into the remaining three factors when "the delay involved becomes 'so protracted as to be "presumptively prejudicial" . . . .'" Id. at 131, 390 S.E.2d at 520 (citation omitted). In this case, sixteen months passed from the date of appellant's initial indictment in Frederick County until his trial commenced. This delay requires us to address the remaining

three factors set forth in Barker.  See Arnold v. Commonwealth, 18 Va. App. 218, 223, 443 S.E.2d 183, 186, aff'd on reh'g en banc, 19 Va. App. 143, 450 S.E.2d 161 (1994).

"Once shown that there has been a delay that is 'presumptively prejudicial,' the burden 'devolves upon the Commonwealth to show, first, what delay was attributable to the defendant and not to be counted against the Commonwealth, and, second, what part of any delay attributable to the prosecution was justifiable.'"  Beachem, 10 Va. App. at 131-32, 390 S.E.2d at 520 (citation omitted).

The Commonwealth concedes that the first portion of the delay, from the initial indictment in Frederick County until the nolle prosequi of that charge, is chargeable to the prosecution, but contends that the delay was justifiable.  Appellant argues that if the Commonwealth had adequately investigated the matter, it would not have nolle prosequied the proceedings because the location of Hayes' death would have appeared clouded with uncertainty, rendering Frederick County the proper forum.

Ordinarily, "the prosecution of a criminal case shall be had in the county or city in which the offense was committed."  Code § 19.2-244.  Where a killing has occurred "under circumstances which make it unknown where such crime was committed," the crime may be prosecuted where the body was found.  Code § 19.2-247.

The parties have cited no cases, and we have found none, defining the degree of proof necessary to establish that a

-7-

"homicide has been committed . . . under circumstances which make it unknown where such crime was committed" pursuant to Code § 19.2-247.  However, concerning questions of venue, "the Commonwealth must produce evidence sufficient to give rise to a 'strong presumption' that the offense was committed within the jurisdiction of the court, and this may be accomplished by either direct or circumstantial evidence."  Cheng v. Commonwealth, 240 Va. 26, 36, 393 S.E.2d 599, 604 (1990).  See also Davis v. Commonwealth, 14 Va. App. 709, 711, 419 S.E.2d 285, 287 (1992).

Hayes' body was found in Frederick County, and the autopsy report indicated that she drowned there.  Following the initial indictment in Frederick County, however, the Commonwealth received information from Oates indicating that appellant may have actually killed his wife before transporting her in the car to the creek.  Oates stated that Hayes remained motionless and showed no signs of life after appellant had smothered her.  This description tended to prove that appellant killed his wife in Winchester.  Moreover, Dr. Field advised Locke that she had ruled the case a drowning only because Hayes was found in water.  At the time the Commonwealth moved to nolle prosequi the original Frederick County indictment, it was logical to assume that the evidence, when presented at trial, would prove that Hayes died in Winchester and that venue was proper in Winchester pursuant to Code § 19.2-244.  Consequently, the Commonwealth's decision to nolle prosequi the Frederick County indictment, rather than face

-8-

a possible dismissal on grounds of improper venue, was reasonable. Only through clairvoyance could the prosecutor have known that the Winchester court, when faced with two medical opinions that Hayes' cause of death could not be determined, would dismiss the Winchester proceedings. There is no evidence that the Commonwealth deliberately selected such a circuitous route to bring appellant to trial, or that the procedure was employed intentionally to gain strategic advantage. The delay associated with the initial proceedings in Frederick County, therefore, was justifiable under the circumstances.

By requesting or concurring in continuances in the subsequent proceedings in Winchester and Frederick County, appellant contributed to the length of the delay. See Williamson, 13 Va. App. at 658, 414 S.E.2d at 610. In Winchester, appellant concurred in a continuance from June 18 to July 22, 1996. During that period of time the case was continued upon appellant's motion to September 17, 1996. In Frederick County on January 17, 1997, appellant was granted a continuance of the January 31 trial date until March 31, 1997.

Additionally, nearly a month passed between the dismissal of the Winchester indictment and the re-institution of proceedings in Frederick County. This period of time should not be counted against the Commonwealth. See United States v. MacDonald, 456 U.S. 1, 7 (1982) (the Sixth Amendment speedy trial clause "has no application after the Government, acting in good faith, formally

drops charges. Any undue delay after charges are dismissed, like any delay before charges are filed, must be scrutinized under the Due Process Clause, not the Speedy Trial Clause."). Therefore, at least six months of the ensuing delay following the nolle prosequi was either attributable to appellant or excludable from speedy trial considerations.

With regard to the third factor under Barker, we note that appellant objected to the granting of the nolle prosequi on March 7, 1996, and again asserted his right in a motion to dismiss prior to trial.

Finally, in determining the factor of prejudice, we consider three interests: "'(1) preventing oppressive pretrial incarceration; (2) minimizing the accused's anxiety; and (3) limiting the possibility that the defense will be impaired.'" Arnold, 18 Va. App. at 224, 443 S.E.2d at 187 (citation omitted).

Appellant contends that he suffered great stress while awaiting trial. The record does not reflect, however, that appellant suffered anxiety any greater than any other similarly situated defendant awaiting trial upon a murder charge.

Furthermore, other than the simple passage of time, appellant has demonstrated no prejudice from the delay. The record does not reveal the nature or substance of the anticipated testimony of the witnesses appellant claims he was prevented from calling. "To conclude on this record that [appellant's] defense was impaired by the delay in bringing him to trial would require

nothing short of sheer speculation on our part." Beachem, 10 Va. App. at 134, 390 S.E.2d at 522. We decline to engage in such speculation.

Balancing our conclusions regarding the four Barker factors, we find that the trial judge did not err in concluding that appellant was not denied his constitutional right to a speedy trial. Although we conclude that a portion of the delay in bringing appellant to trial was attributable to the Commonwealth, the trial judge did not err in finding that the delay was justifiable. We find no evidence of prejudice associated with the delay. Accordingly, we affirm appellant's conviction.

Affirmed.