COURT OF APPEALS OF VIRGINIA

Present: Judges Beales, O'Brien and Lorish
Argued at Lexington, Virginia

JAMES DYER BUCKLAND

v.      Record No. 0780-24-3

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION* BY
JUDGE RANDOLPH A. BEALES
JUNE 3, 2025

FROM THE CIRCUIT COURT OF WISE COUNTY
Ronald K. Elkins, Judge

David B. Childers for appellant.

Jason D. Reed, Senior Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.

A jury in the Circuit Court of Wise County convicted James Dyer Buckland of attempted

aggravated murder of a law enforcement officer, aggravated malicious wounding, assault on a

law enforcement officer, and two counts of using a firearm in the commission of a felony. On

appeal, Buckland challenges the trial court's denial of his motion to transfer venue and the trial

court's denial of his motion to dismiss his charges on speedy trial grounds.

I. BACKGROUND

"In accordance with familiar principles of appellate review, the facts will be stated in the

light most favorable to the Commonwealth, [as] the prevailing party at trial." *Gerald v.

Commonwealth*, 295 Va. 469, 472 (2018) (quoting *Scott v. Commonwealth*, 292 Va. 380, 381

(2016)). "This principle requires us to 'discard the evidence of the accused in conflict with that

of the Commonwealth, and regard as true all the credible evidence favorable to the

---

* This opinion is not designated for publication. *See* Code § 17.1-413(A).

Commonwealth and all fair inferences to be drawn therefrom.'" *Kelley v. Commonwealth*, 289 Va. 463, 467-68 (2015) (quoting *Parks v. Commonwealth*, 221 Va. 492, 498 (1980)).

On May 25, 2021, Buckland was arrested on charges of attempted murder of a law enforcement officer, use of a firearm in the commission of a felony, and possession of a firearm as a convicted felon. On June 24, 2021, Buckland waived his right to a preliminary hearing on those charges. A grand jury later indicted Buckland on August 18, 2021, for seventeen offenses (including the five offenses of which he was ultimately convicted). Buckland was then arraigned on those indictments on August 23, 2021, and he orally requested a speedy trial at that time. At the arraignment, the trial court appointed counsel for Buckland and set the jury trial dates for January 31, 2022, through February 4, 2022.

On September 20, 2021, Buckland, through counsel, and the Commonwealth jointly moved for psychological evaluations to determine Buckland's sanity and his competency to stand trial. The trial court initially set the return date for the psychological evaluations for November 1, 2021. The evaluators, however, later informed the trial court that they could not interview Buckland until after that date, and the parties jointly agreed to continue the return date to December 6, 2021. When the evaluators then informed the trial court that they could not interview Buckland until January 2022 "due to exposure to COVID-19," the parties again jointly agreed to continue the case until January 25, 2022. On that date, for reasons not stated in the record before this Court on appeal, the parties jointly agreed to continue the case to March 31, 2022, and later jointly agreed to continue the case again to July 8, 2022. With one exception, Buckland's counsel signed each of the above continuance orders on Buckland's behalf.[1] The parties then jointly agreed to continue the case to September 12, 2022, and then again to September 27, 2022. Buckland signed both of those continuance orders alongside his counsel.

---

[1] The order continuing the case to January 25, 2022, was only signed by the trial judge.

On September 27, 2022, Buckland's counsel withdrew as counsel of record, and the trial court appointed Buckland new counsel. On January 12, 2023, Buckland's second counsel withdrew as counsel of record. The trial court then appointed Buckland new counsel on January 19, 2023. On February 6, 2023, the parties jointly agreed to schedule the jury trial for October 19, 2023—with a motions date in March 2023. The parties later agreed to continue the motions date to June 2023, but they kept the October 19, 2023 trial date. Buckland signed the order continuing the motions date. Each continuance order was entered "[u]pon agreement of the Commonwealth and the Defendant," and each continuance order stated that Buckland "fully understands his/her rights to a Speedy Trial" and that he further understood that if he desired a speedy trial, he was required to expressly notify the trial court in writing.

On June 12, 2023, Buckland's counsel moved to transfer venue, arguing that Buckland could not receive a fair and impartial trial in Wise County because the victims were "well known in the community" and the case had "received significant media attention." The trial court took the motion to transfer venue under advisement. The trial court ultimately denied Buckland's motion after impaneling the jury.

On October 16, 2023, three days before trial, Buckland's counsel moved to dismiss Buckland's charges on both constitutional and statutory speedy trial grounds. The trial court denied Buckland's motions, finding that there was "[n]o continuance" that could "be attributed solely to the Commonwealth."

After hearing the evidence and argument, the jury subsequently convicted Buckland of attempted aggravated murder of a law enforcement officer, aggravated malicious wounding, assault on a law enforcement officer, and two counts of using a firearm in the commission of a felony. By final sentencing order entered on January 10, 2024, the trial court sentenced

Buckland to two life sentences plus eleven years of incarceration.[2]  Buckland now appeals to this Court.

On April 5, 2024, Buckland's counsel filed a motion for an extension of time to file the transcripts for appeal.  Although his motion bears the caption, "In The Court of Appeals of Virginia," the motion was stamped, received, and filed by the Clerk of the Circuit Court of Wise County and then transmitted to this Court as part of the trial court record.  Buckland did not move this Court for an extension of time to file the transcripts.  On April 9, 2024, Buckland's counsel again moved the trial court to extend the filing time.  That same day, and well more than 21 days after entry of the final sentencing order, the trial court signed an order purporting to grant Buckland an additional 30 days from the date of the order to file the transcripts.  Buckland's counsel then filed the transcripts in the trial court on May 23, 2024.

## II.  ANALYSIS

### A.  Deadline for Filing Transcripts

"The transcript of any proceeding is a part of the record when it is filed in the office of the clerk of the trial court no later than 60 days after entry of the final judgment."  Rule 5A:8(a).  "This deadline may be extended by a judge of this Court only upon a written motion filed within 90 days after the entry of final judgment."  *Id.*  "When the appellant fails to ensure that the record contains transcripts or a written statement of facts necessary to permit resolution of appellate issues, any assignments of error affected by such omission will not be considered."  Rule 5A:8(b)(4)(ii).  "If . . .

---

[2] The final sentencing order in this case states that Buckland was convicted of capital murder rather than attempted aggravated murder.  Thankfully, the officer whom Buckland shot numerous times survived, and, as the trial court noted in its October 25, 2023 order, the jury found Buckland guilty of "attempted aggravated murder"—not capital murder.  Therefore, we remand this matter to the trial court for the limited purpose of correcting this clear clerical error on the final sentencing order by replacing "Capital Murder Law Enforcement Officer" with "Attempted Aggravated Murder Law Enforcement Officer" (which also aligns with the statutory language now used in Code § 18.2-31(A)(6)).  *See* Code § 8.01-428(B); *Bagley v. Commonwealth*, 73 Va. App. 1, 30 n.10 (2021).

the transcript [or statement of facts] is indispensable to the determination of the case, then the requirements for making the transcript [or statement of facts] a part of the record on appeal must be strictly adhered to." *Bay v. Commonwealth*, 60 Va. App. 520, 528 (2012) (alterations in original) (quoting *Turner v. Commonwealth*, 2 Va. App. 96, 99 (1986)). "This Court has no authority to make exceptions to the filing requirements set out in the Rules." *Shiembob v. Shiembob*, 55 Va. App. 234, 246 (2009) (quoting *Turner*, 2 Va. App. at 99); *see also Bay*, 60 Va. App. at 528-29. "Whether the record is sufficiently complete to permit our review on appeal is a question of law." *Bay*, 60 Va. App. at 529.

The trial court here entered the final sentencing order on January 10, 2024. Sixty days after entry of that final sentencing order was March 10, 2024, but because March 10 was a Sunday, the transcripts were due on or before Monday, March 11, 2024. *See* Code § 1-210(B). However, Buckland's counsel did not file the transcripts in the trial court until much later—on May 23, 2024. Ninety days after entry of the final sentencing order was Tuesday, April 9, 2024, so a motion requesting an extension of time to file the transcripts would have to have been filed in this Court by April 9, 2024. *See* Rule 5A:8(a). Although Buckland's counsel moved for an extension of time in the trial court, he did not make a motion for an extension of time to file the transcripts in this Court as required by Rule 5A:8(a).[3] Thus, those transcripts are not part of the record before this Court on appeal, and we cannot consider them in assessing Buckland's assignments of error.

### B.  Motion to Transfer Venue

On appeal, Buckland argues, "The trial court abused its discretion by unreasonably denying the appellant's motion to transfer the location of the trial to a more suitable and impartial venue as this matter received significant media attention and the victims were well

---

[3] Even if the trial court's order purporting to grant an extension of time to file the transcripts had any legal effect, that extension of time expired on Thursday, May 9, 2024—well before Buckland's counsel actually filed the transcripts in the trial court on May 23, 2024.

known figures in the Wise County community." In support of his argument, he cites "incalculable news stories identifying the appellant" as the shooter, and he contends that the public and potential jurors "must have been influenced by the news stories and social media posts."

"Change of venue is within the sound discretion of the trial court, and refusal to grant it will not constitute reversible error unless the record affirmatively shows an abuse of discretion." *Fields v. Commonwealth*, 73 Va. App. 652, 665 (2021) (quoting *Stockton v. Commonwealth*, 227 Va. 124, 137 (1984)). "When reviewing motions to change venue, 'appellate courts begin with the presumption that the defendant can receive a fair trial from the citizens of the jurisdiction where the offense occurred.'" *Id.* (quoting *Brown v. Commonwealth*, 68 Va. App. 746, 776-77 (2018)). "The defendant bears the burden of overcoming the presumption of a fair trial; he must 'clearly show' that 'there is such a widespread feeling of prejudice on the part of the citizenry as will be reasonably certain to prevent a fair and impartial trial.'" *Id.* (quoting *Brown*, 68 Va. App. at 777). "A showing of either extensive publicity or widespread knowledge of the crime or the defendant is insufficient, on its own, to justify a change of venue." *Id.*

The record before this Court on appeal does not contain any news stories, nor does Buckland provide citations for those articles referenced in his brief. Furthermore, without the transcripts showing the *voir dire*—which were not submitted on time—Buckland's bare assertion that his case had "received significant media attention" is simply inadequate. Because Buckland has not clearly shown "such a widespread feeling of prejudice on the part of the citizenry as will be reasonably certain to prevent a fair and impartial trial," Buckland has not demonstrated reversible error in the trial court's denial of his motion to change venue. Therefore, we hold that the trial court did not err when it denied Buckland's motion to change venue.

## C. <u>Right to a Speedy Trial</u>

Buckland also claims that his statutory right to a speedy trial was violated and argues, "The trial court abused its discretion by unreasonably denying the appellant's motion to dismiss all of the indictments in this matter even though his statutory protections described in §19.2-243 were violated by the lengthy delay between the incident date and his trial." He further claims that his constitutional right to a speedy trial was violated and argues, "The trial court abused its discretion by unreasonably denying the appellant's motion to dismiss all of the indictments in this matter even though his liberty interests and constitutionally mandated protections were violated by the lengthy delay between the incident date and his trial." He contends that he "remained in custody after the incident and following his release from the hospital on May 25, 2021 until his trial on October 19, 2023."

It is well settled that "the statutory right to a speedy trial and the constitutional right to a speedy trial are separate, though related, rights that utilize different frameworks and focus on different elements." *Osman v. Commonwealth*, 76 Va. App. 613, 656 (2023) (quoting *Brown v. Commonwealth*, 75 Va. App. 388, 406 (2022)). "However, because both statutory and constitutional speedy trial challenges present 'a mixed question of law and fact,' this Court gives deference to the trial court's factual findings but reviews statutory interpretations and legal conclusions *de novo*." *Id.* at 656-57 (quoting *Young v. Commonwealth*, 297 Va. 443, 450 (2019)). We will not disturb a trial court's factual findings unless "plainly wrong" or "without evidence to support them." *Ali v. Commonwealth*, 75 Va. App. 16, 33 (2022) (quoting *Wilkins v. Commonwealth*, 292 Va. 2, 7 (2016)).

### 1. *Statutory Speedy Trial Right*

When an accused waives a preliminary hearing and has continuously remained in custody, he must be tried within five months after being indicted. Code § 19.2-243. The

five-month requirement is equal to "152 and a fraction days." *Osman*, 76 Va. App. at 657

(quoting *Ballance v. Commonwealth*, 21 Va. App. 1, 6 (1995)).  However, the speedy trial period

is tolled when the delay is caused

> [b]y continuance granted on the motion of the accused or his
> counsel, or by concurrence of the accused or his counsel in such a
> motion by the attorney for the Commonwealth, or by the failure of
> the accused or his counsel to make a timely objection to such a
> motion by the attorney for the Commonwealth.

Code § 19.2-243(4).  The speedy trial period is also tolled "[b]y a natural disaster, civil disorder,

or act of God."  Code § 19.2-243(7).

The Commonwealth bears the burden of demonstrating that a delay was excused under

Code § 19.2-243.  *Turner v. Commonwealth*, 68 Va. App. 72, 79 (2017).  "The time elapsing

from the finding of probable cause to the initial trial date, even though the accused concurs in the

trial date, is not a continuance within the contemplation of subsection (4) of the statute, but

counts against the Commonwealth in a calculation of compliance."  *Id.* (quoting *Ballance*, 21

Va. App. at 6).  However, when a defendant agrees to an initial trial date beyond the five-month

statutory speedy-trial deadline, those speedy trial requirements are not violated.  *Commonwealth

v. Hutchins*, 260 Va. 293, 297-98 (2000).  Furthermore, while the statute "envisions that routine

and customary motions will be raised and disposed of within this [speedy trial] time provided," it

is well-established that "where complex or last-minute motions necessitate a delay in the judicial

process, the delay will be attributed to the defendant."  *Turner*, 68 Va. App. at 79 (alteration in

original) (quoting *Adkins v. Commonwealth*, 13 Va. App. 519, 523 (1992)).

On March 16, 2020, the Supreme Court of Virginia issued its first judicial emergency

order restricting jury trials in response to the COVID-19 pandemic.  *See In re*: Order Declaring a

Judicial Emergency in Response to COVID-19 Emergency 1-2 (Va. Mar. 16, 2020).  The

Supreme Court issued an additional emergency order suspending jury trials which was in place

from the time Buckland was indicted on August 18, 2021, through June 22, 2022. *See, e.g.*, *In re*: Fortieth Order Extending Declaration of Judicial Emergency in Response to COVID-19 Emergency 1 (Va. May 27, 2022). This Court has previously held that the Supreme Court's emergency orders tolled a defendant's statutory speedy trial rights. *Ali*, 75 Va. App. at 32-33; *Brown*, 75 Va. App. at 415. Thus, the time period before June 22, 2022, was tolled by the judicial emergency and did not count towards the speedy trial limitation of time before trial.

The trial court granted every continuance requested after June 22, 2022—with the consent of Buckland or his counsel. Buckland signed four post-June 22, 2022 continuance orders himself, indicating that he had "seen, agreed, and understood" those orders. Two of the continuances were necessitated by Buckland's change in counsel. Nothing in the record before this Court on appeal or in Buckland's opening brief suggests that Buckland ever objected to the continuances on speedy trial grounds. Therefore, the statutory speedy trial clock after June 22, 2022, was tolled under Code § 19.2-243(4), and the trial court correctly found that Buckland's statutory speedy trial rights were not violated.

### 2. *Constitutional Speedy Trial Right*

"In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." U.S. Const. amend. VI. This constitutional right "is governed by a balancing test that is not tied inextricably to calendar dates." *Osman*, 76 Va. App. at 659 (quoting *Brown*, 75 Va. App. at 406-07). The Supreme Court of the United States in *Barker v. Wingo*, 407 U.S. 514 (1972), articulated four factors for courts to consider with respect to the constitutional right to a speedy trial: (1) the length of delay, (2) the reasons for the delay, (3) the defendant's assertion of his right, and (4) prejudice to the defendant. *Brown*, 75 Va. App. at 407 (citing *Barker*, 407 U.S. at 530). "On appeal, a defendant must establish that 'on balance,' the factors 'weigh in his favor.'" *Id.* (quoting *Ali*, 75 Va. App. at 35).

a. *Length of Delay*

We first consider the length of delay, measured from the time of arrest to the time of trial. *Fowlkes v. Commonwealth*, 218 Va. 763, 766 (1978). If the length of delay is not presumptively prejudicial, we need not examine the remaining *Barker* factors. *Osman*, 76 Va. App. at 660. Whether a delay qualifies as presumptively prejudicial depends on the circumstances of the case, and we have held that delays of one year or more are presumptively prejudicial. *See Ali*, 75 Va. App. at 35-36; *Miller v. Commonwealth*, 29 Va. App. 625, 633 (1999). In this case, more than two years passed between Buckland's arrest in May 2021 and his trial in October 2023. Thus, the length of the delay triggers review of the remaining *Barker* factors.

b. *Reason for Delay*

In addressing the reason for the delay, we "must make two separate determinations: first, what portions of the delays are attributable to the Commonwealth, and second, what portion of the delays attributable to the Commonwealth are justifiable." *Osman*, 76 Va. App. at 660 (citing *Ali*, 75 Va. App. at 36; *Fowlkes*, 218 Va. at 767). It is well-settled that "any delay not attributable to the defendant is the responsibility of the Commonwealth for speedy trial purposes." *Ali*, 75 Va. App. at 42. Indeed, the Commonwealth bears the burden to show "what delay was attributable to the defendant" and "what part of any delay attributable to the prosecution was justifiable." *Beachem v. Commonwealth*, 10 Va. App. 124, 132 (1990) (citing *Fowlkes*, 218 Va. at 767).

The U.S. Supreme Court's decision in *Barker* "recognizes three categories of fault for delay attributable to the government." *Ali*, 75 Va. App. at 42. The first is deliberate delay designed to hamper or harass the defendant, which "should be weighted heavily against the government." *Id.* (citing *Barker*, 407 U.S. at 531 & n.32). The second is negligent delay caused by such circumstances as scheduling problems, understaffing of prosecutors, or overcrowding of

- 10 -

the courts. *Id.* (citing *Barker*, 407 U.S. at 531). Although this type of delay receives "less weight" than deliberate delay, it must still be "considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant." *Id.* (quoting *Barker*, 407 U.S. at 531). The final type of delay is that which is "valid and unavoidable." *Id.*

In this case, Buckland was arrested on May 25, 2021, and the jury trial was initially scheduled for January 31, 2022. On September 20, 2021, the parties jointly moved for Buckland to undergo psychological evaluations, which necessitated a delay. The time before the September 20, 2021 continuance is properly attributed to the Commonwealth, but Buckland concurred in every continuance after that point.[4] Although Buckland's failure "to object to a particular continuance does not mean that the relevant time is attributed to him and excluded from the constitutional calculation," *Ali*, 75 Va. App. at 38, the continuance orders reflect that he affirmatively joined in each continuance request, despite his assertion on brief that the delays were "never at the request of the appellant." Even if Buckland merely consented to the Commonwealth's continuance requests, such consent would render the delays excusable. *See Shavin v. Commonwealth*, 17 Va. App. 256, 269 (1993) (finding that a delay of two and a half years "was excusable based on appellant's admitted consent").

Buckland claims that he "never wanted the trial delayed," that he "never asked or demanded that his first two attorneys withdraw," and that he "[n]ever asked for two psychological evaluations." He also claims that his attorneys could not waive his speedy trial rights for him by signing the agreed continuance orders "without his express written consent." However, Buckland cites no authority undermining the trial court's reliance on his counsel's representations, and he provides no support for his claims that his counsel acted without

---

[4] Although Buckland's counsel did not sign the order entered on November 16, 2021, continuing the review of Buckland's psychological evaluations, that continuance order still reflects that it was entered "[u]pon agreement of the Commonwealth and the Defendant."

authorization. *Cf. Insurance Co. v. Barley's Adm'r*, 57 Va. (16 Gratt.) 363, 373 (1863) ("An attorney at law is an agent to act for his principal in the business of courts."). Furthermore, the record before this Court on appeal shows that Buckland himself signed four of the continuance orders alongside his counsel. Therefore, for all of these reasons, the trial court correctly attributed the delays starting on September 20, 2021, to Buckland.

### c. *Assertion of the Speedy Trial Right*

The third *Barker* factor in the balancing test is "whether the accused asserted his right to a speedy trial." *Ali*, 75 Va. App. at 46 (citing *Beachem*, 10 Va. App. at 132). This Court has recognized that "delay in asserting the right weighs against finding a violation." *Osman*, 76 Va. App. at 669 (quoting *Ali*, 75 Va. App. at 46).

In this case, Buckland orally requested a speedy trial at his initial arraignment, but he subsequently joined in every continuance request, himself or by counsel, without asserting his speedy trial right. Each of the continuance orders stated that Buckland understood that he could assert his speedy trial right in writing. However, he waited to do so until October 16, 2023— only three days before the case was scheduled for trial. Thus, Buckland's own delay in asserting his speedy trial right weighs against finding a violation.

### d. *Prejudice to the Defendant*

Regarding the final *Barker* factor, this Court has stated that "the constitutional speedy trial right aims to protect three separate interests: '(1) preventing oppressive pretrial incarceration; (2) minimizing the accused's anxiety; and (3) limiting the possibility that the defense will be impaired.'" *Osman*, 76 Va. App. at 666 (quoting *Kelley v. Commonwealth*, 17 Va. App. 540, 546 (1994)). "The most important of these interests is the third one." *Id.* at 667 (quoting *Ali*, 75 Va. App. at 47). However, speculative prejudice is not enough to establish a speedy trial violation. *Beachem*, 10 Va. App. at 134-35.

If the Commonwealth causes a delay through deliberate misconduct, "'that official bad faith in causing delay will be weighed heavily against the government' even if 'the accused cannot demonstrate exactly how it has prejudiced him.'" *Ali*, 75 Va. App. at 47 (quoting *Doggett v. United States*, 505 U.S. 647, 656-57 (1992)). On the other hand, if the Commonwealth bears no fault in causing the delay, the defendant "must establish a particularly prolonged or restrictive period of incarceration or a level of anxiety exceeding that faced by others awaiting trial," or the defendant must show specifically how his defense was impaired, such as through unavailable witnesses. *Id.* at 47-48. "A delay caused by governmental negligence 'occupies the middle ground.'" *Id.* at 47 (quoting *Doggett*, 505 U.S. at 656-57).

In this case, although Buckland contends that the "delay caused witnesses['] memories of the incident to become faded or obscured," he points to no examples in the record and provides no details to support this contention. *See Beachem*, 10 Va. App. at 134. In addition, although Buckland asserts that "the delay actually caused appellant to lose hope that he could receive a fair trial," he has failed to establish that he actually experienced a level of anxiety that exceeded that level faced by other people awaiting trial. *See Ali*, 75 Va. App. at 47-48. Finally, while Buckland alleges that the delay allowed the potential jury pool to consume more news coverage of the event, his unsupported allegation would require "nothing short of sheer speculation on our part," which is not appropriate for us to do. *See Beachem*, 10 Va. App. at 134. Therefore, for these reasons, we conclude that Buckland has failed to demonstrate that his defense was impaired by the delay.

e. *Overall Assessment of the* Barker *Factors*

In weighing and balancing all the *Barker* factors together, we find that the totality of the evidence before this Court on appeal does not support Buckland's claim that his constitutional right to a speedy trial was violated.

- 13 -

First, the 118 days of delay between Buckland's arrest and the first continuance on September 20, 2021 (which are properly attributed to the Commonwealth) are substantially shorter than the delays in other cases in which courts have found a violation—and shorter than even when no violation was found to have occurred. *See, e.g.*, *Doggett*, 505 U.S. at 657-58 (finding a violation where the delay between the arrest and trial was eight and a half years, six years of which were caused by the government's negligence); *Barker*, 407 U.S. at 533-34 (finding no violation where the delay between the arrest and trial was "well over five years"); *Fowlkes*, 218 Va. at 766-67 (finding a violation where the overall delay was 27 months, 14 months of which were caused by the Commonwealth's negligence). Second, even if we attributed the entire delay to the Commonwealth, that delay was excusable given Buckland's consistent consent and given that much of the delay was due to Buckland's requests for psychological evaluations and due to the withdrawal of his first two attorneys—situations largely beyond the Commonwealth's control. Third, Buckland did not really object to the asserted speedy trial violation until three days before trial, which weighs against finding a violation. Finally, Buckland's assertions of prejudice are quite vague and are unsupported in the record. Indeed, Buckland provides no specific examples of how his defense was impaired, relying instead on mere speculation that witnesses' memories could have faded. He has also failed to establish that his level of anxiety exceeded that faced by other defendants awaiting trial. For all of these reasons, when weighing the *Barker* factors, the trial court did not err in denying Buckland's motion to dismiss his charges on constitutional speedy trial grounds.

## III. CONCLUSION

In short, we affirm the trial court's judgment and uphold Buckland's convictions. However, we remand this matter to the trial court for the limited purpose that we have noted *supra* of correcting the clerical error in the final sentencing order.

*Affirmed and remanded.*